STATE OF CONNECTICUT *v.* GERMAN MONTANEZ
(AC 21171)

Foti, Mihalakos and Flynn, Js.

---

Argued May 6—officially released July 23, 2002

*Pamela S. Nagy*, special public defender, for the appellant (defendant).

*Mitchell S. Brody*, senior assistant state's attorney, with whom, on the brief, were *James E. Thomas*, state's attorney, and *Donna Mambrino* and *Sandra L. Tullius*, senior assistant state's attorneys, for the appellee (state).

*Opinion*

FOTI, J. The defendant, German Montanez, appeals from the judgment of conviction, rendered after a jury trial, of two counts of manslaughter in the first degree with a firearm as an accessory in violation of General Statutes §§ 53a-55a and 53a-8, and one count of assault in the first degree as an accessory in violation of General Statutes §§ 53a-59 (a) (5) and 53a-8.[1] On appeal, the defendant claims that the court (1) failed to instruct the jury that if it found that the state had failed to disprove his claim of self-defense, it must find him not guilty, (2) improperly instructed the jury that accessory to manslaughter in the first degree with a firearm was a lesser offense included within the greater offense of murder, (3) failed to instruct the jury on the "subjective aspect of the retreat rule," (4) denied his request for a mistrial and (5) refused to admit evidence of a victim's prior conviction. In regard to the first issue raised by the defendant, we conclude that the court committed reversible error when it failed to instruct the jury that if it found that the state had failed to disprove the defendant's claim of self-defense, it was bound to find the defendant not guilty. Accordingly, we reverse the judgment of the trial court and remand the case for a

---

[1] The jury acquitted the defendant of two counts of murder as an accessory in violation of General Statutes §§ 53a-54a and 53a-8, two counts of conspiracy to commit murder in violation of General Statutes §§ 53a-48 and 53a-54a, and one count of capital felony as an accessory in violation of General Statutes §§ 53a-54b (8) and 53a-8.

new trial. We will address the other issues raised by the defendant insofar as they are likely to arise during the new trial.

The record supports the following summary of relevant facts. On the evening of August 14, 1995, the defendant and his accomplice, Jorge Ramos, became involved in an altercation with several other men. The series of events, which occurred on or near School Street in Hartford, began as an exchange of verbal insults between, on the one hand, the defendant and Ramos and, on the other hand, David Arce, Angel Arce, Randy Medina, Robert Brown and Ricardo Gonzalez.

The disagreement apparently began when David Arce perceived that the defendant stared at him as David Arce crossed a street. Shortly thereafter, the defendant called to David Arce and asked him why he had been looking at him. David Arce told the defendant, "You don't like me, just say so." Ramos, who accompanied the defendant, suggested that David Arce fight with the defendant. A short while later, David Arce returned to the scene with his brother, Angel Arce, and others.

At one point during the incident, while standing in a nearby parking lot, Ramos brandished a gun. Ramos told Medina to tell Angel Arce to "chill out" or he would "take him down." The verbal exchange between Ramos and the others continued for some time. Ultimately, Ramos pointed his gun at Angel Arce. Brown did not believe that Ramos had bullets in his gun; he told Ramos to go ahead and "pull the trigger." Ramos did pull the trigger, but the gun did not fire. With his free hand, Ramos struck Angel Arce.

The defendant and Ramos walked from the parking lot and into a driveway that ran along a nearby building. Angel Arce continued to exchange words with Ramos, telling him to put down his gun and fight with him. David Arce, Brown and Medina followed Angel Arce.

Ramos once again displayed his gun, pointing it at the men who were following him. Near the end of the driveway, the defendant entered a door that led into a hallway to the adjacent apartment building. Seconds later, the defendant reemerged from the doorway, firing a gun. Ramos also began firing his gun. David Arce sustained a gunshot wound to his buttocks; both Angel Arce and Brown sustained fatal gunshot injuries. Both the defendant and Ramos jumped over a nearby fence and fled the scene. Additional facts will be set forth where necessary.

I

The dispositive issue in this appeal is whether the court improperly failed to instruct the jury that if it found that the state had failed to disprove the defendant's claim of self-defense, it must find the defendant not guilty. We conclude that the court's failure to so instruct the jury constituted reversible error.

In his brief, the defendant states that "[t]he only issue at trial was whether this was a planned shooting or if it was in self-defense." At trial, the defendant attempted to demonstrate that Brown was the initial aggressor and that he was justified in his actions under a theory of self-defense. To that end, the defendant proffered evidence tending to show that Brown had a violent character and evidence to show that during the incident underlying this appeal, Brown held a gun to his head and threatened to kill him. The defendant also attempted to demonstrate that he struggled with Brown and ultimately took control of Brown's gun.

The court instructed the jury as to the claim of self-defense.[2] It properly instructed the jury that "when the

[2] Relevant portions of the court's self-defense instruction are as follows: "I want to turn next to the issue of justification, commonly called self-defense. In this case, the defense of justification has been raised. Now, under our law, when the defense of justification is raised, the state has the burden of disproving such defense beyond a reasonable doubt. General Statutes [§ 53a-19] and subsection (a) provides, subject to the exceptions

defense of justification is raised, the state has the burden of disproving such defense beyond a reasonable doubt." The court then instructed the jury, at length, as to the circumstances under which a person is justified in the use of physical force in self-defense. The court read excerpts from General Statutes § 53a-19 and properly

in [subsections] (b) and (c), as follows, and I'm going to read to you now from our statute that relates to justification of self-defense.

"A person is justified in using reasonable physical force upon another person to defend himself from what he reasonably believes to be the use or imminent use of physical force and he may use such degree of force which he reasonably believes to be necessary for such purpose. Except that deadly physical force may not be used unless the actor reasonably believes that such other person is, one, using or about to use deadly physical force or, two, inflicting or about to inflict great bodily harm.

"You must determine whether the degree of force used was reasonable. The test for the degree of force in self-defense cases is a subjective-objective test, meaning it has some subjective and some objective aspects. In evaluating a claim of self-defense, you must first examine the danger that the defendant claims was faced. The defendant could have justifiably exercised deadly force if he reasonably believed that someone was using or about to use deadly force against himself and that deadly force was necessary to repel such attack."

The court provided further instruction as to the subjective-objective aspect of the defense, and explained subsections (b) and (c) of the statute. The court concluded its instruction as follows: "Also, if you find that any of the shots that were fired incapacitated any of the victims and were found to be lethal, then you would have to find justification unless the state proved any one of these seven aforementioned [exceptions to the defense] beyond a reasonable doubt. But if you find that first shot or the shot that incapacitated any of the victims or all of them did not, in fact, kill them, then, of course, the defendant would not be justified after they were incapacitated to continue to shoot that victim or at that victim. . . . You may also consider evidence of flight as it related to the defendant's claim of self-defense in this case. You may choose to consider whether evidence of flight tended to show that the defendant believed that what he had done was not merely an act of self-defense, but rather, was something that was considered wrong in the eyes of the law.

"Of course, it is up to you and you alone to draw whatever inferences you wish based on your view of all the evidence. The claim of justification applies to the charges of murder, the lesser included offenses of manslaughter, conspiracy to commit murder, as well as the charge of assault. That is, the claim of justification applies to all six counts of the information. You must separately evaluate the claim of justification as it applies to each separate count."

explained the provisions set forth therein. The court concluded its specific instructions on the defense by reminding the jury that the defense applied to all six counts of the information.

The defendant does not claim that the court failed to instruct the jury that the state carried the burden of disproving the defense. Instead, the defendant claims that the court's instruction misled the jury as to the import of a finding that the state had failed to disprove the defense. In other words, the defendant claims that the court failed to instruct the jury that it must find the defendant not guilty if it found that the state had failed to disprove the defense. He argues that "the court never instructed that self-defense was a complete defense to any of the crimes charged and that the defendant must be found not guilty unless the state disproved the [claimed] justification."[3]

"Due process requires that a defendant charged with a crime must be afforded the opportunity to establish a defense. . . . This fundamental constitutional right includes proper jury instructions on the elements of self-defense so that the jury may ascertain whether the state has met its burden of proving beyond a reasonable doubt that the assault was not justified. . . . [T]he standard of review to be applied to the defendant's constitutional claim is whether it is reasonably possible that the jury was misled. . . . The charge is to be read

---

[3] Despite the fact that the defendant failed to object to the court's instruction at trial, we note that the defendant submitted a written request to charge on self-defense, containing the desired instruction at issue, thereby preserving his claim for our review. See Practice Book § 42-16; *State* v. *Miller*, 67 Conn. App. 544, 558–59, 787 A.2d 639, cert. denied, 259 Conn. 923, 792 A.2d 855 (2002).

In his written request to charge, the defendant sought, inter alia, the following instruction as to self-defense: "[Y]ou have heard all of the evidence in this case with reference to the defendant's claims of self defense. The state must disprove this defense beyond a reasonable doubt. *If it has not, you must find the defendant not guilty.*" (Emphasis added.)

as a whole and individual instructions are not to be judged in artificial isolation from the overall charge. . . . The test to be applied to any part of a charge is whether the charge, considered as a whole, presents the case to the jury so that no injustice will result. . . . While the instructions need not be exhaustive, perfect or technically accurate, they must be correct in law, adapted to the issues and sufficient for the guidance of the jury." (Internal quotation marks omitted.) *State* v. *Rodriguez*, 47 Conn. App. 91, 95, 702 A.2d 906 (1997), cert. denied, 243 Conn. 960, 705 A.2d 552 (1998).

Our inquiry into whether the court's instruction sufficiently guided the jury to a proper verdict necessarily asks whether due process considerations required the court to instruct the jury, as the defendant suggests, that it was bound to find the defendant not guilty if it found that the state had failed to disprove the claimed defense of justification. We conclude that the court was so required and, on the basis of a fair review of the entire charge, that it failed to convey that instruction to the jury.

A fair reading of the court's instruction leaves it unclear, at best, as to the consequence of a finding that the state had failed to disprove the claimed defense. Insofar as the court instructed the jury on the defense itself, i.e., that the state bore the burden of disproving the defense and that the defense applied to all of the charges against the defendant in this case, the instructions were proper. We hold, however, that part of a legally adequate instruction as to the defense should convey that the *effect of a finding that the state has failed to disprove the defense* requires the jury to render a verdict in the defendant's favor. The court must unambiguously instruct the jury that it must find the defendant not guilty if it finds that the state has not disproved the defense.[4]

---

[4] The model jury instruction for General Statutes § 53a-19 found in A. Ment & R. Fracasse, Connecticut Selected Jury Instructions: Criminal (3d

The state argues that court's use of the words "justified" or "justification" in its instruction "effectively apprised the jury that the state's failure to meet its burden of proof results in a verdict of not guilty." The state also argues that the court's general instruction on the presumption of innocence logically informed the jury that if the state failed to prove any aspect of its case, or failed to disprove the claimed defense, beyond a reasonable doubt, then it should continue to presume that the defendant is innocent. We do not agree with either of those arguments.

The court's use of the terms "justified" or "justification" did not necessarily inform the jury that if the defense applied to the defendant's actions that it should find him not guilty. In other words, we cannot say that the jury necessarily understood justification to require a finding of not guilty. Likewise, we do not assume that the court's general instruction as to the presumption of innocence necessarily conveyed to the jury that if the state had failed to disprove the defense beyond a reasonable doubt, it should continue to presume that the defendant was not guilty of the crimes with which he stood charged. Instead, as the defendant suggests, it is reasonably possible that the jury could have interpreted the court's instruction to mean that a finding of justification permitted it to find the defendant guilty of a lesser included offense.

The defendant's right to avail himself of the claimed defense, and to receive a technically accurate instruction as to the defense itself, would be of no value if the

Ed. 1995) § 2.39, is consistent with our holding. Section 2.39 suggests the use of the following instruction: "You *must find the defendant not guilty on the grounds of justification* unless you find that the state has proven to you, beyond a reasonable doubt, any one of the following elements . . . ." (Emphasis added.) Likewise, the section also suggests that the court instruct the jury that "[s]elf defense is a legal defense to the use of force that would otherwise be criminal."

jury was left to ponder the significance of its ultimate finding in regard to the defense. A proper self-defense instruction must inform the jury that the defense not only justifies conduct that would otherwise be criminal in nature, but that it is a complete defense in a criminal proceeding. It is reasonably possible that the court's omission of an instruction in that regard misled the jury and that the instruction as given did not perform its function of guiding the jury to a proper verdict.

## II

The defendant next claims that given the facts of this case, the court improperly instructed the jury that manslaughter in the first degree with a firearm as an accessory was a lesser offense included within the greater offense of murder as an accessory. We disagree.

During its charge, the court instructed the jury that if it did not find that the evidence warranted a conviction as to the crime of murder, as set forth in counts one and two of the information, then the jury "must go on to consider whether the evidence is sufficient to establish beyond a reasonable doubt the defendant's guilt of the lesser included offense of being an accessory to the crime of manslaughter in the first degree with a firearm with respect to each count [of murder]." The court then instructed the jury as to the elements of the crime of manslaughter in the first degree with a firearm. The defendant does not challenge the substance of the court's instruction. Instead, he argues that the court should not have instructed the jury as to that lesser included offense because he did not have fair notice that he faced conviction of that crime. Specifically, he points out that the state did not charge him with that offense, and he posits that the charging documents were not drafted in such a manner as to put him on notice that it was a lesser offense included within the crime of murder.

The defendant did not object to the court's instruction at trial. He seeks review of his unpreserved claim under the doctrine set forth in *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989).[5] Under *Golding*, "a defendant can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." (Emphasis in original.) Id. "The first two *Golding* requirements involve whether the claim is reviewable, and the second two involve whether there was constitutional error requiring a new trial. . . . This court may dispose of the claim on any one of the conditions that the defendant does not meet." (Internal quotation marks omitted.) *State* v. *Jones*, 65 Conn. App. 649, 653, 783 A.2d 511 (2001).

The claim is reviewable because the record affords us an adequate basis on which to review the claim, which is constitutional in nature, alleging the violation of the defendant's constitutional right to have notice of the charges against him. We will dispose of the claim,

[5] In the alternative, the defendant seeks review under the plain error doctrine set forth in Practice Book § 60-5. Plain error review is reserved for "truly extraordinary situations where the existence of the error is so obvious that it affects the fairness and integrity of and public confidence in the judicial proceedings. . . . A defendant cannot prevail under [the plain error doctrine] . . . unless he demonstrates that the claimed error is both so clear and so harmful that a failure to reverse the judgment would result in manifest injustice." (Internal quotation marks omitted.) *State* v. *J.R.*, 69 Conn. App. 767, 778, 797 A.2d 560, cert. denied, 260 Conn. 935, 802 A.2d 89 (2002). Our analysis under *Golding* reveals no error in the court's action. Accordingly, the defendant's claim of plain error likewise fails.

however, under *Golding*'s third prong because the defendant has failed to demonstrate that a constitutional violation clearly exists that deprived him of a fair trial.

Our state and federal constitutions require that a criminal defendant receive notice of the nature and cause of the charges against him. U.S. Const., amends. VI, XIV; Conn. Const., art. I, § 8. "It is well settled that notice of a charged offense includes notice of all lesser included offenses. . . . A criminal defendant is put on constitutionally sufficient notice when he is charged with an offense that he may be convicted of any lesser included offense." (Citation omitted.) *State* v. *Pierce*, 64 Conn. App. 208, 216, 779 A.2d 233 (2001). "The test for determining whether one crime is a lesser included offense of another crime is whether it is possible to commit the greater offense in the manner described in the information or bill of particulars without having first committed the lesser. . . . This test is satisfied if the lesser offense does not require proof of any element that is not needed to commit the greater." (Citation omitted; internal quotation marks omitted.) *State* v. *Vasquez*, 48 Conn. App. 130, 134, 708 A.2d 976, cert. denied, 245 Conn. 905, 718 A.2d 14 (1998).

Manslaughter in the first degree with a firearm can be a lesser included offense of murder. *State* v. *Shipman*, 195 Conn. 160, 162, 486 A.2d 1130 (1985); *State* v. *Marino*, 190 Conn. 639, 653, 462 A.2d 1021 (1983). The former crime requires, however, proof of an additional element, the use of a firearm, that is not a necessary element of murder, as defined in our statutes. Where murder is charged, the court is permitted to instruct the jury as to the lesser included offense of manslaughter in the first degree with a firearm only if the charging documents sufficiently allege that the defendant committed murder with the use of a firearm, thereby making that element a necessary element of the crime charged.

The defendant argues that the information did not specify that he had committed murder with the use of a firearm. He further argues that to prove that he committed the crime of manslaughter in the first degree with a firearm, the state would have to prove an additional element that is not necessary to prove the greater offense. The state argues, to the contrary, that the charging documents put the defendant on notice that he was charged with having committed murder with the use of a firearm. We agree with the state.

Applying the aforementioned test to the present case, we ask whether it is possible to commit murder as an accessory, in the manner described in the information,[6] without first having committed the crime of accessory to manslaughter in the first degree with a firearm. The state charged, in count one of its information, that the defendant had committed the "crime of murder in violation of Connecticut General Statutes §§ 53a-54a and 53a-8 and [alleged] that on or about August 14, 1995, at approximately 9:00 PM, at 37-39 School Street, Hartford, Connecticut, said defendant, with the intent to cause the death of Robert Brown, did intentionally aid his accomplice, Jorge Ramos, who did shoot and cause the death of Robert Brown." Count two contained the same language, but alleged the murder of Angel Arce.

We conclude that it would have been impossible for the defendant to have committed the crime of murder, in the manner alleged in the information, without the use of a firearm. Accordingly, the defendant's argument that the lesser included offense required proof of an additional element not needed to prove the greater offense must fail. In reaching our conclusion, we rely on the definition of firearm provided in General Statutes § 53a-3 (19). That section defines a "firearm" as "any

---

[6] We note that the defendant did not seek a bill of particulars. See Practice Book §§ 41-20 and 41-21.

sawed-off shotgun, machine gun, rifle, shotgun, pistol, revolver or other weapon, whether loaded or unloaded from which a shot may be discharged . . . ." General Statutes § 53a-3 (19). The legislature also defines "deadly weapon" as "any weapon, whether loaded or unloaded, from which a shot may be discharged, or a switchblade knife, gravity knife, billy, blackjack, bludgeon, or metal knuckles. . . ." General Statutes § 53a-3 (6). We construe those two statutory definitions to indicate that a firearm is a distinct type of deadly weapon, but it is also the only object defined in our Penal Code that is capable of discharging a shot.

Applying that interpretation to the issue before us, we hold that the state's allegation in counts one and two of the information, namely, that the defendant "did intentionally aid his accomplice . . . who did *shoot* and cause the death" of the victims, provided adequate notice to the defendant that he was charged with having used a firearm in the commission of the crimes. (Emphasis added.) We resolved a similar issue in *State v. Ferreira*, 54 Conn. App. 763, 739 A.2d 266, cert. denied, 251 Conn. 916, 740 A.2d 866 (1999). In *Ferreira*, the state alleged in a bill of particulars that the defendant in that case had committed murder and aided and abetted murder. Specifically, the state alleged that the defendant killed the victim by " 'means of a deadly weapon' " and that he " 'shot and killed' " the victim. Id., 769. We held that the manner in which the state alleged that the defendant had committed murder put him on notice that he could be convicted of aiding and abetting manslaughter in the first degree with a firearm despite the fact that the state did not specifically allege the use of a firearm in the charging documents. Id., 770.

We find support for our present holding in the reasoning we set forth in *Ferriera*. We concluded: "Because the statutory definitions of firearm and deadly weapon both include a weapon from which a shot may be dis-

charged and *because a firearm is the only deadly weapon, as defined in the statutes, which is capable of shooting,* it is impossible to commit murder in the manner described in the information or bill of particulars without having committed manslaughter in the first degree with a firearm. We conclude, therefore, that the notice contained in the bill of particulars and the information was adequate to inform the defendant that a firearm was used in the commission of the murder." (Emphasis added.) Id.

The defendant argues that our resolution of the present issue should be controlled by *State* v. *Guess,* 39 Conn. App. 224, 665 A.2d 126, cert. denied, 235 Conn. 924, 666 A.2d 1187 (1995), and *State* v. *Falcon,* 26 Conn. App. 259, 600 A.2d 1364 (1991), cert. denied, 221 Conn. 911, 602 A.2d 10 (1992). We disagree. This court, in both *Guess* and *Falcon,* considered whether an allegation of murder, as set forth in the respective charging documents, permitted the trial court to charge the jury on manslaughter in the first degree with a firearm as a lesser included offense. In both cases, this court concluded that the trial court improperly included such a charge. The manner in which the state charged the defendants in both cases was similar; the state did not mention the use of a firearm, the use of a deadly weapon or that the defendant had "shot" the victim.[7] As we have already explained, the information in the present case charged the defendant with intentionally aiding Ramos, "who did shoot and cause the death" of the victims.

---

[7] In *Guess,* the state charged that the defendant, "with intent to cause the death of another person, did cause the death of [the victim] in violation of § 53a-54a (a) of the Connecticut General Statutes." (Internal quotation marks omitted.) *State* v. *Guess,* supra, 39 Conn. App. 238. In *Falcon,* the state charged that the defendant, "with intent to cause the death of another person, caused the death of such person, in violation of section 53a-54a of the General Statutes." (Internal quotation marks omitted.) *State* v. *Falcon,* supra, 26 Conn. App. 262.

That language distinguishes the present case from both *Guess* and *Falcon*.

For the foregoing reasons, we conclude that the defendant has not demonstrated that a constitutional violation clearly exists that deprived him of a fair trial. Accordingly, his claim fails under *Golding*'s third prong.

### III

The defendant next claims that the court improperly explained the retreat rule in its instructions concerning self-defense. We disagree.

The court instructed the jury as to the laws applicable to the defendant's claim of self-defense. The defendant challenges the court's instructions insofar as they concerned the defendant's duty to retreat in complete safety if he knew that he was able to do so. After instructing the jury as to other aspects of the defense, the court stated in relevant part: "General Statutes § 53a-19 (b) provides in pertinent part that—and again, I'm quoting from one of our statutes—notwithstanding the provisions of subsection (a), a person is not justified in using deadly physical force upon another person if he knows that he can avoid the necessity of using such force with complete safety by retreating."

The court subsequently discussed the issue of retreat two more times in its charge. The court stated: "Justification is not a defense if the defendant's use of force was the product of a combat by agreement or if he could have avoided the use of deadly force with complete safety by retreating or if the defendant provoked the use of physical force or was the aggressor." The court also instructed the jury that the state could disprove the defense if it proved certain facts beyond a reasonable doubt, including the fact that "the use of such force could have been avoided with complete safety by retreating."

On appeal, the defendant claims that the court failed to convey to the jury the "subjective aspect of the retreat rule."[8] The defendant argues that the court misled the jury because by failing to instruct the jury that part of its inquiry had to ask whether the defendant knew that he could have retreated in complete safety, it essentially instructed the jury that it should evaluate the defendant's knowledge of his ability to retreat under an objective standard.

We apply the same standard of review to this claim of instructional error as we did to the claim of instructional error in part I. Because the claimed error implicates the defendant's constitutional right to present a defense, we ask whether, in light of the overall charge, "it is reasonably possible that the jury was misled." (Internal quotation marks omitted.) *State* v. *Rodriguez*, supra, 47 Conn. App. 95.

Section 53a-19 (b) provides in relevant part that "a person is not justified in using deadly physical force

---

[8] As was the case with the defendant's first claim of instructional error, which we addressed in part I, the defendant failed to object to the claimed error at trial. The defendant, however, included the desired instruction as to the retreat rule in his written request to charge, thereby preserving the issue for our review. See footnote 3.

In his written request to charge, the defendant sought the following instruction: " '[A] person is not justified in using deadly physical force upon another person if he knows that he can avoid the necessity of using such force with complete safety . . . by retreating.' The statute requires both that retreat was completely safe and available, and that the defendant knew of it. Complete safety means without any injury whatsoever to him.

"The self defense statute focuses on the person claiming self defense. It focuses on what he reasonably believes under the circumstances and presents a question of fact as to whether a safe retreat was available, and whether the defendant knew of it.

"If you find proven beyond a reasonable doubt that a safe retreat was available and that the defendant knew of it, you should reject the self defense claim. The law stresses that self defense cannot be retaliatory. It must be defensive and not punitive. So you must ask yourself: 'Did the defendant know that he could avoid the use of deadly physical force by retreating safely?' If so, and yet he chose to pursue the use of deadly physical force, you should reject the self defense claim."

upon another person if he knows that he can avoid the necessity of using such force with complete safety . . . by retreating . . . ." Our Supreme Court has noted that this provision requires the fact finder to ascertain whether an opportunity to retreat in complete safety existed and whether the actor knew of such opportunity. *State* v. *Ash*, 231 Conn. 484, 492, 651 A.2d 247 (1994). Our Supreme Court has further stated that the statute requires the fact finder to focus on what the actor himself knew under the circumstances. "[A] charge on the duty to retreat is flawed if it fails to instruct the jury to consider the subjective component of the duty to retreat: the defendant's knowledge of his ability to retreat." *State* v. *Scarpiello*, 40 Conn. App. 189, 211, 670 A.2d 856, cert. denied, 236 Conn. 921, 674 A.2d 1327 (1996).

Here, the court instructed the jury that "a person is not justified in using deadly physical force upon another person if he knows that he can avoid the necessity of using such force with complete safety by retreating." By means of that instruction, the court properly instructed the jury, using the words of § 53a-19 (b) itself, that it should consider whether the defendant had the opportunity to retreat in complete safety and whether the defendant subjectively was aware of such opportunity. The court properly focused the jury's inquiry on what the defendant knew during the incident. But see *State* v. *Ash*, supra, 231 Conn. 496 (trial court improperly "muddied the jury's understanding of the proper subjective standard" by instructing jury to consider what avenues of retreat defendant could perceive rather than what defendant did perceive). The fact that the court did not instruct the jury using the specific language of the defendant's request is not determinative. Although the defendant's requested instruction was legally accurate, our concern is whether the court's instruction fairly conveyed the substance of that request so as to

lead the jury to a proper verdict. See *State* v. *DeBarros*, 58 Conn. App. 673, 690–91, 755 A.2d 303, cert. denied, 254 Conn. 931, 761 A.2d 756 (2000); *State* v. *Cardany*, 35 Conn. App. 728, 739–40, 646 A.2d 291, cert. denied, 231 Conn. 942, 653 A.2d 823 (1994). We conclude that it did.

The defendant correctly points out that the court referred to the duty to retreat two more times after it had delivered its initial instruction. In those subsequent references to the duty to retreat, the court failed to reiterate that the jury should consider what the defendant knew or perceived during the incident. We agree with the state, however, that those subsequent references did not likely cause the jury to ignore the subjective component of the instruction that the court already had discussed. The defendant argues that by failing to indicate on those occasions that the jury had to find that he had to have known of an ability to retreat, the court suggested that the state could have disproved the defense by simply showing that such a retreat existed. We are not persuaded.

In *State* v. *Amado*, 254 Conn. 184, 756 A.2d 274 (2000), our Supreme Court resolved a similar issue. The trial court in *Amado* correctly instructed the jury as to the appropriate standard by which to evaluate the defendant's duty to retreat. Id., 194. The trial court later revisited the issue, but failed to repeat the subjective nature of the inquiry in each of its instructions. Id., 194–95. Despite the fact that the trial court in *Amado* subsequently delivered another instruction in which it reiterated the subjective nature of the jury's inquiry, our Supreme Court's reasoning in that case is illuminating. Our Supreme Court upheld the instruction. It concluded that in contrast to a situation in which the trial court might have affirmatively misstated the proper inquiry, "there was not a reasonable possibility that the jury was misled because the trial court referred to the

correct standard each time that it discussed the standard." Id., 195.

In the present case, the court did not affirmatively misstate the standard in either of its subsequent references to the duty to retreat. It merely failed to reiterate the subjective component of the standard that it had recited shortly beforehand. Under our standard of review, we do not view individual instructions in isolation from the overall charge. Instead, we ask "whether the charge, considered as a whole, presents the case to the jury so that no injustice will result." (Internal quotation marks omitted.) *State* v. *Rodriguez*, supra, 47 Conn. App. 95. We conclude that it is not reasonably possible that the jury would have interpreted those subsequent instructions as a directive to ignore the complete instruction on the duty given to it moments before.

The defendant argues that the issue should be controlled by *State* v. *Ash*, supra, 231 Conn. 484, and *State* v. *Jones*, 39 Conn. App. 563, 665 A.2d 910, cert. denied, 235 Conn. 931, 667 A.2d 800 (1995). We disagree because both of those cases are distinguishable. In *Ash*, our Supreme Court held that the trial court improperly instructed the jury as to the subjective aspect of the retreat rule. The trial court in *Ash* first stated the correct standard, instructing the jury, in accordance with the statutory language, to consider what the defendant knew during the incident. *State* v. *Ash*, supra, 490. Subsequently, however, the court misstated the standard by instructing the jury to consider the defendant's actions in light of an objective standard. Id., 490, 495–96. In contrast, the court in the present case did not misstate the law or instruct the jury to consider the defendant's actions in light of an objective standard.

In *Jones*, the trial court correctly instructed the jury as to the subjective aspect of the retreat rule by reading

to the jury the relevant statutory language. *State* v. *Jones*, supra, 39 Conn. App. 570. The trial court then improperly instructed the jury that "a person *must retreat from the perceived harm if they are able to retreat in complete safety.*" (Emphasis in original.) Id. On appeal, this court concluded that "[t]hese words incorrectly suggested that the statute permitted the jury to measure the defendant's knowledge of his ability to retreat according to an objective standard of reasonableness rather than the subjective standard of the defendant's actual knowledge." Id., 571. This court concluded that despite the fact that the trial court had explicated the correct standard both before and after that improper language, the trial court's reference to an objective standard was of such a nature that made it reasonably possible that the jury was misled. Id., 573. Those facts are distinguishable from the present case where, we again observe, the court did not misstate the law but, rather, failed to reiterate an instruction on the subjective component of the retreat rule when it subsequently mentioned the duty to retreat.

For those reasons, we conclude that it is not reasonably possible that the court's instruction as to the retreat rule misled the jury.

## IV

The defendant next claims that the court improperly denied his request for a mistrial. Given our resolution of this appeal, we need not reach this issue.

The record reflects that prior to trial, the defendant filed a motion in limine to preclude the admission of evidence of his parole status at the time of the incident underlying this appeal. Prior to the testimony of Peter Getz, an officer with the Hartford police department, the court ruled that it would exclude any reference to the defendant's parole status or his release from prison. During his direct examination, Getz referred to the

defendant's parole status. The prosecutor did not inquire into the subject matter and immediately after the remarks, she stated that she did not claim that testimony. The court sustained the defendant's objection to the remarks, ordered that the remarks be stricken and instructed the jury to disregard the remarks. The court excused the jury, and the defendant requested a mistrial. The court denied the oral motion for a mistrial and, upon the jury's return to the courtroom, further instructed the jury not to consider the remarks during its deliberations. The court reiterated a similar instruction during its final charge.

On the basis of our review of the record, we agree with the court's assessment that the remarks were neither elicited by the prosecutor nor intentionally made. Accordingly, the issue is not likely to arise during the new trial. The court's ruling on the admissibility of the challenged remarks is not at issue in this appeal and, because we are remanding the case for a new trial, we need not consider whether the court properly declined to grant the defendant's motion for a mistrial.

V

Finally, the defendant claims that the court improperly refused to admit certain evidence of Brown's violent character and thereby infringed on the defendant's right to present a defense. We disagree.

The following additional facts underlie the defendant's claim. Prior to trial, the prosecutor filed a motion in limine seeking to exclude character or reputation evidence of any of the victims, including Brown, unless or until the defendant made a prior showing that he was aware of such character or reputation evidence prior to the incident. At the hearing on that motion, the defendant's attorney indicated that he intended to introduce, inter alia, evidence of two of Brown's convictions: One for robbery in the second degree, and one

for threatening in violation of General Statutes § 53a-62. The defendant's attorney further indicated that such evidence was admissible under Conn. Code Evid. § 4-4 because it tended to prove that Brown had a violent character, and it was relevant to the defendant's claim of self-defense. The prosecutor argued that the convictions were too remote and that they were irrelevant because they were too dissimilar to the present charges. The court reserved judgment on the issue at that time, but took up the issue again during trial.

When the court next revisited the issue, it asked the parties to elaborate on the nature of the prior convictions. The prosecutor represented that to her knowledge, the threatening incident resulted in a 1992 misdemeanor conviction. She further represented that the conviction was based on a harassing telephone conversation between Brown and a girlfriend. The defendant's attorney argued that he sought to introduce evidence of the conviction, not the facts underlying the conviction. He argued that evidence of convictions for prior violent offenses was admissible to bolster the defendant's theory that Brown had acted as the initial aggressor. The prosecutor informed the court that the other conviction at issue was a 1988 felony conviction for robbery in the third degree. The court, however, deferred ruling on the admissibility of these convictions at that time.

The court next took up the issue after the state had rested. The court ruled that it would admit evidence of Brown's 1988 robbery conviction, a felony. The court ruled that despite the scant information available to it concerning that conviction, the crime is one of violence by its very nature because it requires that a defendant threaten the immediate use of physical force. The court further explained that it was not too remote, despite the fact that the conviction occurred seven years prior to the incident underlying the defendant's trial. The

court also reasoned that its probative value required its admission.

With respect to the threatening conviction, the court heard further evidence concerning the incident. The defendant's counsel indicated that Brown's conviction was based on a claim made by Brown's girlfriend that Brown had called her on the telephone and, relative to a domestic dispute, threatened to kill her. The defendant's counsel further represented that the records available to her did not indicate where Brown was when he made that threat in the course of a telephone conversation and that the records did not indicate that Brown's girlfriend experienced imminent fear.

The court ultimately ruled that it would exclude evidence of Brown's threatening conviction. The court based its ruling on several factors. First, the court noted that a threat was not necessarily a violent act. Second, the court found that the threat at issue did not necessarily tend to prove that Brown had a violent character. Third, the court noted that the threat occurred in a domestic setting, which was completely different from the setting of the incident at issue. Fourth, the court noted that the conviction was a misdemeanor. Fifth, the court was persuaded that the alleged conduct did not threaten imminent harm.[9] Sixth, the court found the evidence to be minimally relevant. Seventh, the court found that the evidence was likely to confuse and mislead the jury. Eighth, the court found that the evidence was likely to cause undue prejudice to the state's case. Finally, the court found that the facts surrounding the conviction, which arose out of a domestic

[9] The court stated: "The underlying theory on the issue of letting in evidence of violent character or violent propensity in the context of the self-defense relates to the imminency or the immediacy of danger or possible harm. A telephone threat, factually, it seems to me, and logically, does not indicate the kind of immediacy and imminency that would suggest that an immediate response might be sometimes necessary."

dispute, were dissimilar from the facts at issue in the case before it, a face-to-face dispute involving the use of guns.

On appeal, the defendant claims that the court's ruling as to the threatening conviction deprived him of his right to present a defense under the sixth amendment to the United States constitution, which is applicable to the states through the fourteenth amendment, and under the due process clause of article first, § 8, of the constitution of Connecticut. The defendant recognizes that he failed to raise his constitutional argument at trial and seeks review of his claim under *State* v. *Golding*, supra, 213 Conn. 239–40. See part II. The defendant argues that the disallowed evidence was crucial to a critical issue in the case, i.e., whether Brown was the initial aggressor, and that the court's ruling prevented the jury from reaching a proper verdict. We will review the claim because the record is adequate for our review, and the alleged error rises to the level of constitutional dimension. Further, the issue is likely to arise during the new trial. We will, however, dispose of the claim under *Golding*'s third prong because the defendant has failed to demonstrate that a constitutional violation clearly exists that deprived him of a fair trial.

"The sixth amendment right to compulsory process includes the right to offer the testimony of witnesses, and to compel their attendance, if necessary, [and] is in plain terms the right to present a defense, the right to present the defendant's version of the facts as well as the prosecution's to the jury so that it may decide where the truth lies." (Internal quotation marks omitted.) *State* v. *Carter*, 228 Conn. 412, 422, 636 A.2d 821 (1994).

In *State* v. *Miranda*, 176 Conn. 107, 405 A.2d 622 (1978), our Supreme Court held that "in a homicide prosecution where the accused has claimed self-

defense, the accused may show that the deceased was the aggressor by proving the deceased's alleged character for violence. The deceased's character may be proved by reputation testimony, by opinion testimony, or by evidence of the deceased's convictions of crimes of violence, irrespective of whether the accused knew of the deceased's violent character or of the particular evidence adduced at the time of the death-dealing encounter. We emphasize that the accused is not permitted to introduce the deceased's entire criminal record into evidence in an effort to disparage his general character; only specific convictions for violent acts are admissible. . . . Nor is the accused authorized to introduce any and all convictions of crimes involving violence, no matter how petty, how remote in time, or how dissimilar in their nature to the facts of the alleged aggression. In each case the probative value of the evidence of certain convictions rests in the sound discretion of the trial court." (Citation omitted.) Id., 114.

This court has explained that "[t]he constitutional right to present a defense does not include the right to introduce any and all evidence claimed to support it. . . . The trial court retains the power to rule on the admissibility of evidence pursuant to traditional evidentiary standards. . . . The defendant has no right to present evidence that is not admissible according to the rules of evidence . . . .

"Upon review of a trial court's decision, we will set aside an evidentiary ruling only when there has been a clear abuse of discretion. . . . The trial court has wide discretion in determining the relevancy of evidence and the scope of cross-examination and [e]very reasonable presumption should be made in favor of the correctness of the court's ruling in determining whether there has been an abuse of discretion." (Citation omitted; internal quotation marks omitted.) *State* v. *Collins*, 68 Conn. App. 828, 831, 793 A.2d 1160, cert. denied, 260 Conn. 941, 835 A.2d 58 (2002).

As the trial court noted, the encounter between the defendant and Brown occurred during a face-to-face street altercation involving the use of guns. The incident underlying the threatening conviction occurred in a domestic setting by means of a telephone conversation. It was reasonable for the court to conclude that the misdemeanor conviction for threatening was neither sufficiently similar in nature to the alleged aggression in the present case, nor sufficiently relevant, to be admitted. See *State* v. *Abdalaziz*, 248 Conn. 430, 452, 729 A.2d 725 (1999). It also was reasonable for the court to conclude that the conviction for threatening was not so probative on the issue of whether Brown possessed a violent character as to outweigh its likely prejudicial effect on the jury. In sum, the trial court was in a better position than are we to evaluate that evidence and to weigh its potential effect on the jury in reaching its verdict. The court evaluated the proffered evidence according to the rules of evidence; its ruling did not deprive the defendant of his right to present a defense.

Our determination of that issue should in no way be interpreted to mean that the court must necessarily exclude that evidence. The resolution of that issue on remand shall remain within the sound discretion of the trial court.

The judgment is reversed and the case is remanded for a new trial.

In this opinion the other judges concurred.