STATE OF CONNECTICUT *v.* TERRANCE WORTHAM
(AC 22788)

Bishop, McLachlan and Hennessy, Js.

Argued September 9—officially released December 30, 2003

*Gerald E. Bodell,* special public defender, for the appellant (defendant).

*Susann E. Gill,* senior assistant state's attorney, with whom, on the brief, were *Jonathan C. Benedict,* state's attorney, and *C. Robert Satti, Jr.,* senior assistant state's attorney, for the appellee (state).

*Opinion*

HENNESSY, J. The defendant, Terrance Wortham, appeals from the judgment of conviction, rendered following a jury trial, of attempt to commit murder with a firearm in violation of General Statutes §§ 53a-49,[1] 53a-54a (a)[2] and 53-202k,[3] assault in the first degree with a firearm in violation of General Statutes §§ 53a-59 (a) (5) and 53-202k,[4] carrying a pistol or revolver without a permit in violation of General Statutes § 29-35 and criminal possession of a firearm in violation of General Statutes § 53a-217. On appeal, the defendant claims that the trial court (1) improperly concluded that the cumulative force of the evidence presented by the state was sufficient to disprove beyond a reasonable

[1] General Statutes § 53a-49 (a) provides: "A person is guilty of an attempt to commit a crime if, acting with the kind of mental state required for commission of the crime, he: (1) Intentionally engages in conduct which would constitute the crime if attendant circumstances were as he believes them to be; or (2) intentionally does or omits to do anything which, under the circumstances as he believes them to be, is an act or omission constituting a substantial step in a course of conduct planned to culminate in his commission of the crime."

[2] General Statutes § 53a-54a (a) provides: "A person is guilty of murder when, with intent to cause the death of another person, he causes the death of such person or of a third person or causes a suicide by force, duress or deception; except that in any prosecution under this subsection, it shall be an affirmative defense that the defendant committed the proscribed act or acts under the influence of extreme emotional disturbance for which there was a reasonable explanation or excuse, the reasonableness of which is to be determined from the viewpoint of a person in the defendant's situation under the circumstances as the defendant believed them to be, provided nothing contained in this subsection shall constitute a defense to a prosecution for, or preclude a conviction of, manslaughter in the first degree or any other crime."

[3] General Statutes § 53-202k provides in relevant part: "Any person who commits any class A, B or C felony and in the commission of such felony uses, or is armed with and threatens the use of, or displays, or represents by his words or conduct that he possesses any firearm . . . shall be imprisoned for a term of five years . . . ."

[4] Although the defendant was charged with two counts of assault in the first degree with a firearm in violation of General Statutes §§ 53a-59 (a) (5) and 53-202k, the jury found him not guilty of the second count.

doubt his defense of justification and (2) violated his constitutional rights by providing a misleading jury instruction on self-defense.[5] We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. On April 5, 2000, between 8 p.m. and 8:30 p.m., four teenage girls, D, E, S and L,[6] were walking along William Street in Bridgeport when they saw the defendant and Ahmed Jefferson arguing. The girls were familiar with both men. At one point, D, S and L stopped to speak with Jefferson, but E continued to walk ahead. As E neared the defendant, he screamed: "If you're not Ahmed, don't come near me! Don't come near me!" At that point, a gunfight broke out between the defendant and Jefferson. The evidence revealed that the defendant fired thirteen gunshots from his .45 caliber weapon and that Jefferson fired five gunshots from his .38 automatic weapon. Neither man was injured in the exchange.

E was caught in the crossfire and struck by gunshots in the temple, jaw and shoulder. Ballistics testing determined that E was hit by one bullet fired by the defendant and one bullet fired by Jefferson. D also was shot, suffering a gunshot wound in the left leg. The testimony concerning the initiation of the gunfight was in conflict because each eyewitness was facing a different direc-

---

[5] General Statutes § 53a-19 (a) provides: "Except as provided in subsections (b) and (c) of this section, a person is justified in using reasonable physical force upon another person to defend himself or a third person from what he reasonably believes to be the use or imminent use of physical force, and he may use such degree of force which he reasonably believes to be necessary for such purpose; except that deadly physical force may not be used unless the actor reasonably believes that such other person is (1) using or about to use deadly physical force, or (2) inflicting or about to inflict great bodily harm."

[6] At the time of the event, the witnesses were minors between the ages of thirteen and fifteen years old. Because of their age, they will be referred to by initials to protect their respective identities. See General Statutes § 54-86e.

tion at the onset of the gunfire. E testified that the defendant pulled his gun out first and was the first to fire. E also testified that she did not see Jefferson with a gun.

Another witness, D, testified that before the shooting erupted, Jefferson asked the defendant whether he was looking for him and what the defendant planned to do now that he had found him. D further testified that the defendant responded: "I'll show you who's bad," to which Jefferson retorted: "Yeah, I'm bad." Contrary to E's version of the events, D testified that Jefferson was the first to fire. D testified, however, that when Jefferson pulled out his gun, "there [were] shots just going everywhere." In addition, D testified that when she saw Jefferson's gun pulled out, she was not looking in the defendant's direction. At one point, however, D stated that she was able to see both men firing at each other. Although L initially testified to having no memory of who shot first that night, she subsequently identified the defendant as the man who pulled out his gun first. Finally, S testified that Jefferson pulled out his gun and was the first to fire. Yet, S also testified that her back was toward the defendant at the time the first gunshots were fired.

At trial, the defendant presented the affirmative defense of self-defense. On the basis of that evidence, the jury found him guilty of the crimes of attempt to commit murder with a firearm, assault in the first degree with a firearm, carrying a pistol or revolver without a permit and criminal possession of a firearm. This appeal followed.

I

On appeal, the defendant contends that the state failed to disprove beyond a reasonable doubt his justification defense. Specifically, the defendant argues that the state did not present evidence that directly defeated

his claim of self-defense.[7] He argues that the evidence made it absolutely clear that he was not the initial aggressor and, as such, there was no evidence to refute his reasonable belief that Jefferson was about to use deadly force and no proof that the defendant was not justified in firing back. We disagree.

We begin by noting that the "standard for reviewing sufficiency claims in conjunction with a justification offered by the defense is the same standard used when examining claims of insufficiency of the evidence. . . . In reviewing [a] sufficiency [of evidence] claim, we apply a two-part test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the jury reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt." (Internal quotation marks omitted.) *State* v. *Pranckus*, 75 Conn. App. 80, 85, 815 A.2d 678, cert. denied, 263 Conn. 905, 819 A.2d 840 (2003).

"On appeal, we do not ask whether there is a reasonable view of the evidence that would support a reasonable hypothesis of innocence. We ask, instead, whether there is a reasonable view of the evidence that supports the [trier of fact's] verdict of guilty. . . . We are mindful as well that [t]he state has the burden of disproving the defense of justified use of force . . . beyond a reasonable doubt. . . .Whether the defense of the justified use of force, properly raised at trial, has been disproved by the state is a question of fact for the jury, to be determined from all the evidence in the case and the

---

[7] We note that the defendant made a motion for a judgment of acquittal at the close of the state's case, arguing in part that the evidence was insufficient to establish his guilt. That motion was denied. The defendant renewed his motion, on the same grounds, at the close of his case. As such, the defendant properly preserved his claim for review on appeal.

reasonable inferences drawn from that evidence. . . . As long as the evidence presented at trial was sufficient to allow the jury reasonably to conclude that the state had met its burden of persuasion, the verdict will be sustained." (Internal quotation marks omitted.) Id., 85–86.

To support his contention, the defendant wholly relies on the testimony of D, who stated that she saw Jefferson pull his gun out first.[8] D also stated, however, that at the time she saw Jefferson fire gunshots, she was *looking at Jefferson* and could not see the defendant. D further testified that as a bullet struck her leg, causing her to fall to the ground, she was able to see the defendant with a gun.[9] In contrast, E stated that the defendant

---

[8] During the state's direct examination, the exchange with D was as follows:

"[The Prosecutor]: Who was the first person you saw with a gun?

"[The Witness]: [Jefferson] was the first person I saw.

"[The Prosecutor]: When you saw [Jefferson] with a gun, could you see the [defendant]?

"[The Witness]: Nope.

"[The Prosecutor]: What did you see [Jefferson] do with the gun?

"[The Witness]: He [pulled] out the gun and then—I guess he started shooting—I don't know, I ran."

On cross-examination, D testified:

"[Defense Counsel]: But to the best of your recollection, it was [Jefferson] that pulled out the gun first and started firing—

"[The Witness]: Yeah, that's—

"[Defense Counsel]:—the shots.

"[The Witness]:—who I saw first."

[9] D testified as follows:

"[Defense Counsel]: [D]o you recall telling the police that you saw fire coming out of the gun—out of [Jefferson's] gun? . . .

"[The Witness]: Yeah.

"[Defense Counsel]: Okay. But you weren't looking at [the defendant] at that point. You were looking at—

"[The Witness]: No, I wasn't looking at him.

"[Defense Counsel]:—[Jefferson], correct?

"[The Witness]: Yeah.

"[Defense Counsel]: Okay. And it's when you fell to the ground after you were hit that you were able to see [the defendant] pointing the gun at [Jefferson]; is that right?

"[The Witness]: Yeah."

fired first.[10] Finally, a third witness, L, identified the defendant as the man who pulled his gun out first.[11]

"It is the jury's right to accept some, none or all of the evidence presented. . . . Moreover, [e]vidence is not insufficient . . . because it is conflicting or inconsistent. [The jury] is free to juxtapose conflicting versions of events and determine which is more credible. . . . It is the [jury's] exclusive province to weigh the conflicting evidence and to determine the credibility of witnesses. . . . The [jury] can . . . decide what—all, none, or some—of a witness' testimony to accept or reject. . . . We do not sit as a [thirteenth] juror who may cast a vote against the verdict based upon our feeling that some doubt of guilt is shown by the cold printed record." (Citations omitted; internal quotation marks omitted.) Id., 87–88. Accordingly, we conclude that the evidence was sufficient to sustain the verdict.

## II

The defendant's second claim on appeal is that the court violated his constitutional rights by providing misleading jury instructions on the claim of self-defense. We note that the defendant did not take exception to the court's instructions as given at trial.[12] Accordingly, he seeks review of this claim under *State* v. *Golding*,

---

[10] E testified as follows:

"[Defense Counsel]: And do you know who fired first?

"[The Witness]: [The defendant].

"[Defense Counsel]: And how do you know that?

"[The Witness]: Because he pulled out first.

"[Defense Counsel]: Okay. But you indicated that you didn't see [Jefferson] with a gun, correct?

"[The Witness]: I seen him pull it out first. He was the one who fired first.
                          ***
"[Defense Counsel]: You never saw [Jefferson] with a gun?

"[The Witness]: No."

[11] A fourth witness, S, was not directly asked who fired first.

[12] At the close of the court's charge, the court asked whether the defendant had any exceptions. Counsel replied, "I have no exceptions, Your Honor."

213 Conn. 233, 567 A.2d 823 (1989).[13] "We will review the defendant's claim because the record is adequate for review and because the right to establish a defense is constitutional in nature. *Washington* v. *Texas*, 388 U.S. 14, 19, 87 S. Ct. 1920, 18 L. Ed. 2d 1019 (1967)." (Internal quotation marks omitted.) *State* v. *Skelly*, 78 Conn. App. 513, 515, 827 A.2d 759, cert. denied, 266 Conn. 910, 832 A.2d 74 (2003). We have stated that "[a]n improper instruction on a defense, like an improper instruction on an element of an offense, is of constitutional dimension." (Internal quotation marks omitted.) Id. Consequently, we review the claim under the third prong of *Golding*.

"Even though we review this claim under the third prong of *Golding*, we note that [w]hen the principal participant in the trial whose function it is to protect the rights of his client does not deem an issue harmful enough to press in the trial court, the appellate claim that the same issue clearly deprived the defendant of a fundamental constitutional right and a fair trial . . . is seriously undercut." (Internal quotation marks omitted.) Id., 515–16.

"[T]he standard of review to be applied to the defendant's constitutional claim is whether it is reasonably possible that the jury was misled. . . . In determining whether it was indeed reasonably possible that the jury was misled by the trial court's instructions, the charge to the jury is not to be critically dissected for the purpose of discovering possible inaccuracies of statement,

---

[13] Under *Golding*, "a defendant can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." (Emphasis in original.) *State* v. *Golding*, supra, 213 Conn. 239–40.

but it is to be considered rather as to its probable effect upon the jury in guiding [it] to a correct verdict in the case. . . . The charge is to be read as a whole and individual instructions are not to be judged in artificial isolation from the overall charge. . . . The test to be applied to any part of a charge is whether the charge, considered as a whole, presents the case to the jury so that no injustice will result." (Internal quotation marks omitted.) Id., 515.

## A

The defendant first argues that the jury was misled by the court's instruction on the elements of self-defense.[14]

The portion of the charge to which the defendant takes exception was: "In this case, if you find proven beyond a reasonable doubt that the victim was not using . . . or about to use deadly physical force, or inflict great bodily harm upon the defendant, *and* if you further find proven beyond a reasonable doubt that the defendant had no reasonable belief that the victim was using or about to use deadly physical force or about to inflict great bodily harm upon the defendant, then the defendant would not be justified in using deadly physical force upon the victim." (Emphasis added.) The defendant argues that the instruction as given, using the conjunction "and," rather than the requisite "or," denied him the benefit of any reasonably subjective test by the jury.

"We repeatedly have indicated that the test a jury must apply in analyzing the second requirement [of General Statutes § 53a-19 (a)],[15] i.e., that the defendant reasonably believed that deadly force, as opposed to some lesser degree of force, was necessary to repel the victim's alleged attack, is a subjective-objective one.

---

[14] See footnote 5.
[15] See footnote 5.

The jury must view the situation from the perspective of the defendant." (Internal quotation marks omitted.) *State* v. *Clark*, 264 Conn. 723, 731, 826 A.2d 128 (2003). We begin, therefore, with the components involved in the subjective-objective portion of a self-defense claim.

"The subjective-objective inquiry into the defendant's belief regarding the necessary degree of force requires that the jury make two separate affirmative determinations in order for the defendant's claim of self-defense to succeed. First, the jury must determine whether, on the basis of all of the evidence presented, the defendant *in fact had believed* that he had needed to use deadly physical force, as opposed to some lesser degree of force, in order to repel the victim's alleged attack. . . . If the jury determines that the defendant had not believed that he had needed to employ deadly physical force to repel the victim's attack, the jury's inquiry ends, and the defendant's self-defense claim must fail. If, however, the jury determines that the defendant in fact had believed that the use of deadly force was necessary, the jury must make a further determination as to whether *that belief was reasonable*, from the perspective of a reasonable person in the defendant's circumstances. . . . Thus, if a jury determines that the defendant's honest belief that he had needed to use deadly force, instead of some lesser degree of force, was not a reasonable belief, the defendant is not entitled to the protection of § 53a-19." (Emphasis in original; internal quotation marks omitted.) Id., 732.

The charge in this case is identical to the charge that was at issue in *State* v. *Clark*, supra, 264 Conn. 733. There, our Supreme Court stated that such a charge was "improper because it inject[s] an element into the self-defense calculus that need not be considered, namely, whether the *victim* was, in fact, using or about to use deadly force." (Emphasis in original.) Id., 732. The court stated that "[a]ccording to a plain reading of

this instruction . . . the state had to prove *both* elements in order for the jury to reject the defendant's claim of self-defense." (Emphasis in original.) Id., 734. Because the effect of that charge served to increase "the *state's* burden of disproving self-defense," the court concluded that this instruction was not harmful to the defendant. (Emphasis in original.) Id. As a result, the claim failed to satisfy the third prong of *Golding*. Id.

The facts here are very similar to those involved in *Clark*. Hence, following the reasoning of our Supreme Court, we conclude that, although this portion of the charge was not correct, it was not harmful to the defendant because it increased the state's burden of disproving self-defense. Thus, the claim fails under the third prong of *Golding*.

B

The defendant next contends that the court failed to instruct the jury that if the state failed to disprove the defendant's claim of self-defense, it must find the defendant not guilty. We disagree.

We previously considered the adequacy of a jury instruction explaining the defense of justification in *State* v. *Montanez*, 71 Conn. App. 246, 253, 801 A.2d 868, cert. denied, 261 Conn. 935, 806 A.2d 1069 (2002). In *Montanez*, the instruction failed to convey the natural consequence that if the state was unable to disprove a claim of self-defense, the defendant must be found not guilty. Id., 250. This court held that "part of a legally adequate instruction as to the defense [of justification] should convey that the *effect of a finding that the state has failed to disprove the defense* requires the jury to render a verdict in the defendant's favor. The court must unambiguously instruct the jury that it must find the defendant not guilty if it finds that the state has not disproved the defense." (Emphasis in original.) Id., 253. We stated that "[t]he defendant's right to avail himself

of the claimed defense, and to receive a technically accurate instruction as to the defense itself, would be of no value if the jury was left to ponder the significance of its ultimate finding in regard to the defense." Id., 254–55. As a result of the inadequate charge, this court concluded that the instruction was misleading to the jury. Id., 255.

The present case is distinguishable from *Montanez*. Here, the court's initial definition of self-defense was "a means by which the law justifies the use of force that would otherwise be illegal." Later in the charge, the court stated: "If the state has not disproved [the defense of justification] beyond a reasonable doubt and you find that the defendant was legally justified in his use of deadly physical force, you *must* find the defendant not guilty." (Emphasis added.) Obviously, the instruction in this case included the language missing from the charge at issue in *Montanez*. In fact, this charge is consistent with our holding in *Montanez*.[16] As such, we conclude that this charge, when read as a whole, was sufficient to guide the jury properly in its deliberations.

C

The defendant's final contention is that it was misleading for the court to charge the jury regarding the initial aggressor, provocation and duty to retreat exceptions to the defense of self-defense. As a preliminary matter, we note that during the charging conference, the defendant agreed that jury instructions regarding § 53a-19 (b)[17] and (c),[18] commonly referred to as the

___

[16] In addition, we note that the jury instruction at issue in this case comports with the model jury instruction cited by this court in *State* v. *Montanez*, supra, 71 Conn. App. 253 n.4.

[17] General Statutes § 53a-19 (b) provides in relevant part: "Notwithstanding the provisions of subsection (a) of this section, a person is not justified in using deadly physical force upon another person if he knows that he can avoid the necessity of using such force with complete safety (1) by retreating . . . ."

[18] General Statutes § 53a-19 (c) provides in relevant part: "Notwithstanding the provisions of subsection (a) of this section, a person is not justified in

duty to retreat and initial aggressor exceptions to the self-defense statute, were appropriate in this case.[19] Moreover, during closing arguments, the defendant highlighted evidence to persuade the jury that the exceptions did not apply in this case.[20] Although we have stated that "[a] defendant cannot change his strategy on appeal . . . a party may not pursue one course of action at trial for tactical reasons and later on appeal argue that the path he rejected should now be open to him." (Internal quotation marks omitted.) *State* v.

using physical force when (1) with intent to cause physical injury or death to another person, he provokes the use of physical force by such other person, or (2) he is the initial aggressor, except that his use of physical force upon another person under such circumstances is justifiable if he withdraws from the encounter and effectively communicates to such other person his intent to do so, but such other person notwithstanding continues or threatens the use of physical force . . . ."

[19] The following colloquy occurred:

"[Defense Counsel]: "Insofar as our request, [it] would simply be for a charge on [General Statutes §] 53a-19, and I really don't have any objection to [subsections] (b) or (c). I think that they would pertain here, so I don't disagree with [the state] that they should be given. . . .

"The Court: Well, if you have any special—

"[Defense Counsel]: Well, I have—

"The Court:—wording you want, you can bring it to the court's attention.

"[Defense Counsel]: No. I have the factual. I'd just ask the court to read the statute as is . . . ."

[20] On the issue of the duty to retreat, defense counsel argued: "This is a justifiable self-defense, and we would submit in that regard that these girls couldn't avoid being shot. They couldn't retreat, they never had a chance. So, if it happened the way that we submit that it did, that Jefferson pulls out his gun and starts to fire, certainly, it was clear the girls didn't have a chance to get away or retreat. [The defendant], being on the receiving end of that, he certainly didn't have a chance to retreat or get away. His option, which he chose to take, was to take out his gun and return fire in an attempt to save himself, which he was able to do in the circumstances."

In addition, with regard to the issue of initial aggressor and provocation, the defendant argued: "And finally, in regard to self-defense, notwithstanding the provisions of [General Statutes § 53a-19 (a)], a person is not justified in using physical force when, with the intent to cause physical injury or death to another person, he provokes the use of physical force by such other person or he is the initial aggressor. We submit that he was none of the—of those here, that he didn't provoke the use of physical force by Mr. Jefferson, nor was he the initial aggressor."

*Davis*, 76 Conn. App. 653, 662, 820 A.2d 1122 (2003). Nonetheless, we review the claim because the record is clear, and "[a]n improper instruction on a defense . . . is of constitutional dimension." (Internal quotation marks omitted.) *State* v. *Skelly*, supra, 78 Conn. App. 515.

"Our analysis of [these claims] is guided by the principle that [t]he court . . . has a duty not to submit to the jury, in its charge, any issue upon which the evidence would not reasonably support a finding. . . . We thus review all of the evidence adduced at trial in order to discern whether there had been a sufficient basis from which the jury reasonably could conclude that the defendant [(1) was the initial aggressor, (2) had a duty to retreat prior to using force against the victim and (3) provoked the attack]." (Citations omitted; internal quotation marks omitted.) *State* v. *Whitford*, 260 Conn. 610, 625, 799 A.2d 1034 (2002). The state presented the testimony of four eyewitnesses, two of whom suffered severe injuries during the exchange of gunfire. From that testimony, the jury reasonably could have found evidence of provocation in the defendant's statements that "[i]f you are not [Jefferson] don't come near me," and, "I'll show you who's bad."

Furthermore, the evidence presented to the jury as to who was the first to draw a firearm and who was the first to fire was in conflict. As a result, the jury was free to decide who, in fact, was the initial aggressor. Finally, the evidence showed that two of the witnesses were able to flee to safety without being injured. From that evidence, the jury could have found that a safe retreat was possible.

Because our review of the record identifies evidence from which a jury reasonably could have found that the defendant (1) was the initial aggressor, (2) had a duty to retreat and (3) provoked the attack, we conclude

that it was not misleading to the jury for the court to charge on those issues. Accordingly, the defendant's claim fails to satisfy the third prong of *Golding*.

The judgment is affirmed.

In this opinion the other judges concurred.