STATE OF CONNECTICUT *v.* ROBERT WARD
(AC 22781)

Lavery, C. J., and Schaller and West, Js.

Argued January 7—officially released May 20, 2003

*Alice Osedach-Powers*, assistant public defender, for the appellant (defendant).

*Frederick W. Fawcett*, supervisory assistant state's attorney, with whom, on the brief, were *Jonathan C.*

*Benedict,* state's attorney, and *Margaret E. Kelley,* senior assistant state's attorney, for the appellee (state).

*Opinion*

SCHALLER, J. The defendant, Robert Ward, appeals from the judgment of conviction, rendered after a jury trial, of burglary in the second degree in violation of General Statutes (Rev. to 1999) § 53a-102 (a).[1] On appeal, the defendant claims that (1) the trial court improperly denied his motion to set aside the verdict and for a new trial,[2] and (2) that the evidence was insufficient to sustain the conviction. We affirm the judgment of the trial court.

The jury reasonably could have found the following relevant facts. In June, 2000, Willie Blake lived in a six-family apartment house at 103 Catherine Street in Bridgeport with his sister, Rosalee Blake,[3] his brother, John Blake, Sr., his nephew, John Blake, Jr., and his nieces, Teshawn and Tangie.[4]

At approximately 9 p.m. on June 30, 2000, the defendant and Hakeem Mohammed rang Willie Blake's apart-

[1] General Statutes (Rev. to 1999) § 53a-102 (a) provides in relevant part: "A person is guilty of burglary in the second degree when he enters or remains unlawfully in a dwelling at night with intent to commit a crime therein . . . ."

[2] Although we recognize that in his brief, the defendant claims that "the trial court erred in ordering the state to substitute the information to a different charge violating the defendant's constitutional rights to fair notice of the charge against him," that specific argument served as the basis for the defendant's motion to set aside the verdict and for a new trial. Because the court denied that motion, and the defendant raises the same argument on appeal, we treat the claim as alleging the improper denial of the motion.

[3] Although the December 10, 2001 transcript and the parties' briefs refer to Willie Blake's sister as "Rosa Lee Blake," the charging instrument refers to her as "Rosalee Blake." We therefore use the latter spelling. For purposes of this opinion, all references to Rosalee Blake and Rosa Lee Blake are synonymous.

[4] At the time of the incident, John Blake, Jr., was ten years old, Teshawn was twelve years old and Tangie was two years old.

ment doorbell. Willie Blake, who was home watching over his nephew and nieces, answered the door. The defendant and Mohammed questioned Willie Blake regarding the whereabouts of John Blake, Sr. Willie Blake informed them that his brother was not home. The defendant accused Willie Blake of lying and pushed his way into the apartment by wedging a wooden stick[5] between the door and the door frame. Once inside, the defendant began swinging the stick, acting aggressively and using profanity. That behavior upset the children. The defendant remained in the house for approximately thirty minutes while searching for John Blake, Sr. As the defendant was leaving, the defendant remarked that he should have hit Willie Blake with the stick. The defendant also remarked that he and Mohammed would return and that if Willie Blake called the police, they would "shoot up the house."

At 10:30 p.m. on June 30, 2000, the defendant returned to the apartment door by himself. The defendant did not have the stick and remained on the front porch. Willie Blake telephoned the police. By the time the police arrived, however, the defendant already had driven away in a car with Mohammed.

At 12:45 a.m. on July 1, 2000, the defendant returned to Willie Blake's apartment. This time, Rosalee Blake, who had recently returned home from work, answered the door. The defendant was carrying a wooden stick and asked if John Blake, Sr., was home. Rosalee Blake informed him that her brother was not home. The defendant forced his way into the apartment and began using profane language while making threats regarding John Blake, Sr. Willie Blake and Rosalee Blake had to physically force the defendant out of their home. The police

---

[5] Willie Blake described the stick as one half of a two-by-four. Rosalee Blake described the stick as being similar in size and shape to a wooden mop handle.

were called. Upon arrival, the police arrested the defendant, who was standing outside of the apartment.

In a long form information, the state charged the defendant with one count of burglary in the first degree in violation of General Statutes § 53a-101 (a) (1), three counts of risk of injury to a child in violation of General Statutes § 53-21 and one count of threatening in violation of General Statutes (Rev. to (1999) § 53a-62 (a) (1).

In September, 2001, the state filed a substitute information adding one count of conspiracy to commit burglary in the first degree in violation of General Statutes §§ 53a-48 (1) and 53a-101 (a) (1). Finally, on October 23, 2001, the state amended the information to specify that the place burglarized was "the home of Willie or Rosalee Blake."

A jury trial began on December 10, 2001. After the state rested, the defendant sought to dismiss all of the charges and obtain a judgment of acquittal as to all six counts. The court granted the motion with respect to the conspiracy to commit burglary count (count two) and the counts of risk of injury to a child (counts three, four and five). Thereafter, the state filed a substitute information charging the defendant with the remaining counts, one count of burglary in the first degree and one count of threatening.

During counsels' closing arguments to the jury, the court determined that the state had failed to allege sufficient evidence to support a charge of burglary in the first degree and, sua sponte, ordered the state to draw and file a substitute information replacing burglary in the first degree with burglary in the second degree. The defendant did not object or otherwise challenge the court's authority to order the substitution. The state filed the substitute information as ordered. The jury subsequently returned a guilty verdict with respect to the charge of burglary in the second degree

and acquitted the defendant with respect to the threatening charge.

On December 14, 2001, the defendant filed a motion for a new trial or, in the alternative, to set aside the verdict, wherein the defendant argued that he was never given proper notice of the charge of burglary in the second degree. After a hearing on January 18, 2002, the court denied the motion, concluding that the charging instrument placed the defendant on notice that he also was charged with burglary in the second degree. This appeal followed. Additional facts will be set forth as necessary.

## I

The defendant claims that the court improperly denied his motion to set aside the verdict and for a new trial. Specifically, the defendant argues (1) that the court improperly ordered, sua sponte, that the state amend the information by substituting the charge of burglary in the second degree for the charge of burglary in the first degree, and (2) that Practice Book § 36-18 prohibited the amendment to the information.

## A

The defendant first argues that the court improperly ordered, sua sponte, that the state amend the information by substituting the charge of burglary in the second degree for the charge of burglary in the first degree. More specifically, the defendant contends that the amendment was improper because burglary in the second degree is not a lesser included offense of burglary in the first degree and, therefore, the initial charge of burglary in the first degree failed to provide the defendant with adequate notice of the charges against him in violation of the sixth amendment to the United States constitution and the constitution of Connecticut, article first, § 8.

The following additional facts are relevant to the proper resolution of the defendant's claim. In the amended information dated October 23, 2001, the state charged the defendant with burglary in the first degree, stating, inter alia, "that at the City of Bridgeport, Fairfield County, on or about the 30th day of June 2000 at or about 11:33 p.m., at 103 Catherine Street, Bridgeport, the said Robert Ward, while armed with a dangerous instrument, to wit: a large wooden stick, did enter or remain unlawfully in a building, the home of Willie or Rosalee Blake, with intent to commit a crime therein, in violation of Section 53a-101 (a) (1) of the Connecticut General Statutes . . . ."

During trial and after the state had rested, the defendant sought to dismiss each count of the six count information. The court granted the motion with respect to the charges of conspiracy to commit burglary and risk of injury to a child. Following the dismissal of those counts, the defendant offered his opening statement. Having heard the opening statement, the court indicated that it might make additional revisions to the charges after it had an opportunity to review Willie Blake's testimony. The jury was excused for a brief recess. When the court reconvened, it informed counsel that it was dismissing the charge of burglary in the first degree and that it was ordering, sua sponte, that the state amend and file a substitute information replacing the charge of burglary in the first degree with a charge of burglary in the second degree. The court determined that on the basis of the precise time alleged in the information, 11:33 p.m., the testimony by Willie Blake that the defendant did not have a stick when he returned to the apartment at 11:30 p.m., and the conflicting testimony by Blake and police officers with respect to the timing of the incidents led to the conclusion that the information improperly alleged burglary in the first degree.

The state complied with the court's order. In the substitute information filed on December 10, 2001, the state charged the defendant with burglary in the second degree alleging, inter alia, "that at the City of Bridgeport, Fairfield County, on or about the 30th day of June 2000 at or about 11:33 p.m., at 103 Catherine Street, Bridgeport, the said Robert Ward, did enter or remain unlawfully in a dwelling, the home of Willie or Rosalee Blake, at night, with intent to commit a crime therein, in violation of section § 53a-102 of the Connecticut General Statutes . . . ." The jury subsequently convicted the defendant of burglary in the second degree.

The proper appellate standard of review when considering the action of a trial court granting or denying a motion to set aside a verdict and a motion for a new trial is the abuse of discretion standard. See *State* v. *Hammond*, 221 Conn. 264, 267–70, 604 A.2d 793 (1992); see also *Bolmer* v. *McKulsky*, 74 Conn. App. 499, 510, 812 A.2d 869, cert. denied, 262 Conn. 954, 818 A.2d 780 (2003). "In determining whether there has been an abuse of discretion, every reasonable presumption should be given in favor of the correctness of the court's ruling. . . . Reversal is required only where an abuse of discretion is manifest or where injustice appears to have been done." (Internal quotation marks omitted.) *State* v. *Fitzgerald*, 257 Conn. 106, 112, 777 A.2d 580 (2001).

Additionally, it is within the trial court's discretion to allow an amendment to the information. Accordingly, on appeal, review of the court's decision to permit an amendment to the information also is one of abuse of discretion. *State* v. *Nicholson*, 71 Conn. App. 585, 595, 803 A.2d 391, cert. denied, 261 Conn. 941, 808 A.2d 1134 (2002).

Practice Book § 36-18 permits the state to amend the information as long as "no additional or different

offense is charged and no substantive rights of the defendant would be prejudiced. . . ." To determine whether the court abused its discretion, we must determine whether the amendment charged a new or different offense. We therefore must first resolve the issue of whether burglary in the second degree is a lesser offense included within burglary in the first degree.

"A criminal defendant has a constitutional right to be informed of the nature and cause of the charges against him with sufficient precision to enable him to meet them at trial. . . . The state satisfies this constitutional mandate when its pleadings inform the defendant of the charge[s] against him with sufficient precision to enable him to prepare his defense and to avoid prejudicial surprise, and [are] definite enough to enable him to plead his acquittal or conviction in bar of any future prosecution for the same offense . . . ." (Citation omitted; internal quotation marks omitted.) *State* v. *Ferreira*, 54 Conn. App. 763, 767, 739 A.2d 266, cert. denied, 251 Conn. 916, 740 A.2d 866 (1999).

"Nothing is more elementary in criminal law than that an accused is required to defend only against the charge[s] alleged. . . . The information serves the very important function of informing the defendant of the nature and cause of the accusation as required by our federal and state constitutions. U.S. Const., amend. VI; Conn. Const., art. I, § 8. . . . Where one or more offenses are lesser than and included in the crime charged in the information, notice of the crime charged includes notice of all lesser included offenses. . . .

"There are [separate] tests comparing one crime with another to determine if one is a lesser included offense of the other or if the two are separate crimes. See *Blockburger* v. *United States*, 284 U.S. 299, 52 S. Ct. 180, 76 L. Ed. 306 (1932). . . . The test for determining whether one crime is a lesser included offense of

another crime is whether it is possible to commit the greater offense in the manner described in the information or bill of particulars without having first committed the lesser. . . . The lesser included offense doctrine [therefore] implicates notice requirements of due process."[6] (Citations omitted; internal quotation marks omitted.) *State* v. *Falcon*, 26 Conn. App. 259, 263–64, 600 A.2d 1364 (1991), cert. denied, 221 Conn. 911, 602 A.2d 10 (1992).

As we have stated, "[w]e do not undertake a comparison of the elements of one crime to another when the *notice* requirement of due process is at issue." (Emphasis added.) *State* v. *Coleman*, 41 Conn. App. 255, 272, 675 A.2d 887 (1996), rev'd on other grounds, 242 Conn. 523, 700 A.2d 14 (1997); see also *State* v. *Ferreira*, supra, 54 Conn. App. 768–79. Instead, we must determine whether it was possible to commit the greater offense, in the manner described in the information, without having first committed the lesser offense.

The defendant in this case incorrectly relies on the separate offense doctrine to show a lack of notice, and puts forth merely a comparison of the elements of the two offenses to conclude that burglary in the second degree is not a lesser offense included within burglary in the first degree. Specifically, the defendant notes that burglary in the second degree requires proof that the offense occurred at night and in a dwelling while burglary in the first degree does not. The defendant also asserts that burglary in the first degree requires proof that he was armed with a dangerous instrument while burglary in the second degree does not. On the basis of

---

[6] On the other hand, under the test enunciated in *Blockburger*, "a defendant may be convicted of two offenses arising out of the same criminal incident if each crime contains an element not found in the other. . . . [By contrast,] [t]he separate offense doctrine implicates double jeopardy concerns." (Citation omitted; internal quotation marks omitted.) *State* v. *Falcon*, supra, 26 Conn. App. 264.

those distinguishing elements, the defendant principally relies on *State* v. *Coleman*, 242 Conn. 523, 700 A.2d 14 (1997), for the proposition that our Supreme Court conclusively determined that burglary in the second degree can never be a lesser offense included within burglary in the first degree. We disagree with the defendant's narrow reading of *Coleman* and conclude that as long as the state provides sufficient descriptive facts in the information alleging burglary in the first degree such that it was not possible to commit the greater offense without also committing the lesser offense, the information places the defendant on notice of the lesser offense of burglary in the second degree. See *State* v. *Montanez*, 71 Conn. App. 246, 801 A.2d 868, cert. denied, 261 Conn. 935, 806 A.2d 1069 (2002).

In *Montanez*, the trial court instructed the jury that accessory to manslaughter in the first degree with a firearm was a lesser offense included within the greater offense of murder as an accessory. Id., 255. The defendant subsequently was convicted on the lesser offense. Id., 248. On appeal, the defendant claimed that the court should not have instructed the jury as to the lesser included offense because he was not placed on fair notice that he faced conviction of that crime. Id., 255. Contrary to the defendant's argument, we stated that "[m]anslaughter in the first degree with a firearm can be a lesser included offense of murder. . . . The former crime requires, however, proof of an additional element, the use of a firearm, that is not a necessary element of murder, as defined in our statutes. Where murder is charged, the court is permitted to instruct the jury as to the lesser included offense of manslaughter in the first degree with a firearm *only if the charging documents sufficiently allege* that the defendant committed murder with the use of a firearm, thereby making that element a necessary element of the crime charged." (Citations omitted; emphasis added.) Id., 257.

On the basis of the charging instrument's specificity, in *Montanez*, we concluded that it would have been impossible for the defendant to have committed the greater offense, in the manner alleged in the information, without also committing the lesser offense. The state's information specifically charged the defendant with "the crime of murder in violation of Connecticut General Statutes §§ 53a-54a and 53a-8 and [alleged] that on or about August 14, 1995, at approximately 9:00 PM, at 37-39 School Street, Hartford, Connecticut, said defendant, with the intent to cause the death of Robert Brown, did intentionally aid his accomplice, Jorge Ramos, who did *shoot* and cause the death of Robert Brown." (Emphasis added; internal quotation marks omitted.) *State* v. *Montanez*, supra, 71 Conn. App. 258. In essence, the information stated that the defendant was accused of aiding in the "shooting" death of the victim. The lesser included offense of manslaughter in the first degree with a firearm requires the use of a "firearm." We concluded that because General Statutes § 53a-3 (19) defines "firearm" as a weapon from which a "shot" may be discharged, the information, in conjunction with the General Statutes, provided the defendant with sufficient notice because a firearm is the only type of deadly weapon under our Penal Code capable of discharging a shot. *State* v. *Montanez*, supra, 258–59.

Despite the defendant's argument to the contrary, *Montanez* is consistent with our Supreme Court's holding in *State* v. *Coleman*, supra, 242 Conn. 523. As this court did in *Montanez*, the Supreme Court in *Coleman* examined the charging instrument to determine the specificity with which it was drawn. In *Coleman*, the defendant was charged with burglary in the first degree alleging that "on or about the 4th day of March, 1986, prior to 4:00 a.m., in the area of . . . Orange Street, the [defendant] entered or remained unlawfully in a building with the intent to commit a crime therein (to

wit: a sexual assault and/or theft), and he was armed with a dangerous instrument (to wit: a sharp cutting instrument), in violation of Section 53a-101 (a) (1) of the Connecticut General Statutes." (Internal quotation marks omitted.) *State* v. *Coleman,* supra, 242 Conn. 533 n.16. The trial court dismissed that count, but considered the state's request to consider a lesser included offense of burglary in the second degree. Id., 530–31; see also *State* v. *Coleman,* supra, 41 Conn. App. 270. The state filed a substitute information alleging burglary in the second degree, and the defendant subsequently was convicted of burglary in the second degree. *State* v. *Coleman,* supra, 242 Conn. 531.

The defendant appealed to this court in *State* v. *Coleman,* supra, 41 Conn. App. 255, arguing that the charging instrument violated his constitutional right to fair notice. Id., 270. We affirmed the judgment of the trial court and concluded that in light of the information, the charge of burglary in the second degree was a lesser included offense. Id., 272–73. On appeal, the Supreme Court reversed our decision after a careful examination of the charging instrument. The Supreme Court noted that the information failed to contain specific facts and alleged only "that the defendant had burglarized a building . . . [and that] it was possible for the defendant to have committed the crime of burglary in the first degree . . . *without* also having committed the lesser offense of entering a dwelling . . . ." (Emphasis added.) *State* v. *Coleman,* supra, 242 Conn. 533.

Turning to the facts in this case, the October 23, 2001 information describes the greater offense in a manner in which it was not possible to have committed that greater offense, burglary in the first degree, without also having committed the lesser offense of burglary in the second degree. The defendant concedes that the information put him on notice of the charge of burglary in the first degree. Because the only additional elements

of which the defendant would have to be put on notice to be charged properly with burglary in the second degree are "at night" and "dwelling," we must examine the October 23, 2001 charging instrument to determine whether it put the defendant on notice of those two additional elements and the offense of burglary in the second degree.

First, the information put the defendant on notice that he was accused of entering or unlawfully remaining in a dwelling. The information charged the defendant with entering a building at 103 Catherine Street and in particular, the home of either Willie Blake or Rosalee Blake. Although it is true that the crime of burglary in the second degree requires the element of a "dwelling" as opposed to "building," our General Statutes define "dwelling" as a type of building "which is usually occupied by a person lodging therein at night, whether or not a person is actually present . . . ." General Statutes § 53a-100 (a) (2). An apartment is a place usually occupied by a person lodging there at night. Further, the defendant cannot argue that he was not on notice of the fact that an individual apartment, within an apartment home, while a dwelling, also is a separate building. See General Statutes § 53a-100 (1) ("[w]here a building consists of separate units, such as, but not limited to separate *apartments* . . . any unit not occupied by the actor is, in addition to being a part of such building, a separate building" [emphasis added]). The defendant also does not contest that the building in question was an apartment. Therefore, the defendant was on notice that the home owned by Willie Blake or Rosalee Blake at 103 Catherine Street in Bridgeport was a dwelling. By comparison, the information in *State* v. *Coleman*, supra, 242 Conn. 523, provided that the defendant entered a building on a named street without: (1) providing a specific address; (2) providing information as to who resided at the building, if anyone; (3) naming the

owner of the building; or (4) indicating that the building was the home of any person.[7] Accordingly, on the basis of the detailed facts contained in the information in this case, we conclude that the information provided the defendant with sufficient details to put him on notice that he was accused of unlawfully entering or remaining in the subject dwelling.

Second, the defendant was put on notice that he was charged with entering the dwelling at night. The defendant argues that because the information in this case provides a very specific time, 11:33 p.m., instead of using the term "at night," that the information failed to put him on notice that he was accused of entering the dwelling during nighttime. Again, in light of *Montanez*, we disagree. In *Montanez*, the state did not incorporate into the information the statutory term "firearm." Instead, in the information, the state alluded to the use of a firearm by using the language "who did *shoot* and cause the death of Robert Brown." (Emphasis added; internal quotation marks omitted.) *State* v. *Montanez*, supra, 71 Conn. App. 258. In that case, we concluded that the information was sufficient to put the defendant on notice of the firearm. Here, the information does not employ the statutory term "at night," but instead provides the precise time, 11:33 p.m.

That analysis presumes that 11:33 p.m. fell within the statutory definition of "at night." When our Supreme Court addressed the same issue in *Coleman*, it did not

---

[7] Specifically, the information in *Coleman* alleged "that . . . on or about the 4th day of March, 1986, prior to 4:00 a.m., *in the area of* . . . Orange Street, the [defendant] entered or remained unlawfully in a building with the intent to commit a crime therein (to wit: a sexual assault and/or theft), and he was armed with a dangerous instrument (to wit: a sharp cutting instrument), in violation of Section 53a-101 (a) (1) of the Connecticut General Statutes." (Emphasis added; internal quotation marks omitted.) *State* v. *Coleman*, supra, 242 Conn. 533 n.16. The information in *Coleman* charged the defendant with merely entering or unlawfully remaining in a building with the intent to commit a crime.

express any opinion on our previous disposition of that issue. See *State* v. *Coleman,* supra, 242 Conn. 533 n.18. In *State* v. *Coleman,* supra, 41 Conn. App. 272, we stated that "[w]hile the crime of burglary in the first degree did not require the state to allege that the defendant committed the crime at night, it is clear that the state did allege that fact in the information by stating that the crime occurred . . . prior to 4 a.m. We conclude, therefore, that it was not possible for the defendant to commit burglary in the first degree, in the manner described in the information, without first having committed burglary in the second degree." Because the information in this case provides a time element, 11:33 p.m., we agree with our analysis in *Coleman* and conclude that the defendant was on notice that he was accused of entering the dwelling at night.

Consequently, the charging instrument put the defendant on notice of the lesser included offense and the court's sua sponte order requiring the state to file a substitute information was not an abuse of discretion. The defendant's motion was denied properly.

B

The defendant also argues that Practice Book § 36-18 prohibited the amendment to the information. We disagree.

"After commencement of the trial for good cause shown, the judicial authority may permit the prosecuting authority to amend the information at any time before a verdict or finding *if no additional or different offense is charged* and no substantive rights of the defendant would be prejudiced. . . ." (Emphasis added.) Practice Book § 36-18. "The state's right to amend must be limited to substitutions that do not charge the defendant with an additional or different offense because the defendant has a constitutional right to fair notice, prior to the commencement of trial, of

the charges against which he must defend himself." (Internal quotation marks omitted.) *State* v. *Vaughn*, 20 Conn. App. 386, 389, 567 A.2d 392 (1989).

Because a defendant is presumed to have notice of lesser included offenses; see *State* v. *Martin*, 187 Conn. 216, 219, 445 A.2d 585 (1982), citing *Paterno* v. *Lyons*, 334 U.S. 314, 320–21, 68 S. Ct. 1044, 92 L. Ed. 1409 (1948); and because we concluded in part I A that, as charged in the information, burglary in the second degree is a lesser offense included within burglary in the first degree, no additional or different offense was charged that would be in violation of Practice Book § 36-18, and the defendant had notice of that charge. His argument is therefore without merit.

## II

Next, the defendant claims that the state failed to produce sufficient evidence to establish the requisite element of intent to support his conviction of burglary in the second degree. Specifically, he argues that the evidence was insufficient for the jury to reasonably conclude (1) that the crime took place at night, and (2) that he had an intent to commit the crime of threatening against Willie Brown.[8] We are not persuaded.

[8] The defendant concedes that he failed to preserve his claim at trial and, therefore, seeks review pursuant to *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989). "Unpreserved sufficiency claims are reviewable on appeal because such claims implicate a defendant's federal constitutional right not to be convicted of a crime upon insufficient proof." (Internal quotation marks omitted.) *State* v. *Morgan*, 70 Conn. App. 255, 281, 797 A.2d 616, cert. denied, 261 Conn. 919, 806 A.2d 1056 (2002). "Our Supreme Court, following the dictate of the United States Supreme Court in *Jackson* v. *Virginia*, 443 U.S. 307, 316, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979), has held that any defendant found guilty on the basis of insufficient evidence has been deprived of a constitutional right, and would therefore necessarily meet the four prongs of *Golding*. Accordingly, we conclude that no practical reason exists to engage in a *Golding* analysis of a sufficiency of the evidence claim and, thus, review the challenge as we do any other properly preserved claim." (Internal quotation marks omitted.) *State* v. *Padua*, 73 Conn. App. 386, 392, 808 A.2d 361 (2002), cert. granted on other grounds, 262 Conn. 941, 815 A.2d 672 (2003).

"The standard of review employed in a sufficiency of the evidence claim is well settled. [W]e apply a two part test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the [jury] reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt." (Internal quotation marks omitted.) *State v. Green*, 261 Conn. 653, 667, 804 A.2d 810 (2002).

A

The defendant first argues that the evidence was insufficient to sustain his conviction for burglary in the second degree because the state failed to offer sufficient evidence to support a jury finding that the crime took place at night. We disagree.

General Statutes (Rev. to 1999) § 53a-102 provides that "[a] person is guilty of burglary in the second degree when he enters or remains unlawfully in a dwelling at night with intent to commit a crime therein . . . ." "Night" is defined in § 53a-100 (a) (3) as "the period between thirty minutes after sunset and thirty minutes before sunrise."

In his brief, the defendant argues that because Willie Blake's testimony indicated that the defendant entered the apartment at 9 p.m. and because the state offered no evidence to indicate that 9 p.m. in late June in Bridgeport is "night," the evidence was insufficient to support the conviction. That argument ignores the testimony of Rosalee Blake and Officer Jose Paz and Sergeant Kevin Gilleran of the Bridgeport police department. The testimony of those witnesses reasonably could support a jury finding that the defendant unlawfully had entered the apartment at night.

Rosalee Blake testified that approximately fifteen minutes after she returned home from work, at 12:30

a.m., the defendant knocked on the front door. When she answered the door, the defendant forced his way into the home, carrying a "stick" the size of broom handle, and began "swearing and saying bad words [regarding] what he was [going] to do to [her] brother."

Paz and Gilleran testified that during their night patrol shift, they responded to a report of threatening at 103 Catherine Street between 11 p.m. and 11:40 p.m. They also testified that they were later dispatched again to the same address at 2 a.m.

The jury is the arbitor of fact and "[c]redibility is within the sole province of the fact finder." *State* v. *Rogelstad*, 73 Conn. App. 17, 25–26, 806 A.2d 1089 (2002). It is axiomatic that the jury, in its role as fact finder, may choose to believe all, some or none of a witness' testimony. *State* v. *Fullard*, 5 Conn. App. 338, 342, 497 A.2d 1041 (1985). "In assessing the credibility of a witness, jurors are permitted to rely on their everyday experience. Common sense does not take flight at the courthouse door." *State* v. *Rivera*, 74 Conn. App. 129, 138, 810 A.2d 824 (2002). The jury reasonably could have concluded that the relevant incident occurred at 12:45 a.m., and that the time of 12:45 a.m. fell within the period between thirty minutes after sunset and thirty minutes before sunrise. See General Statutes § 53a-100 (a) (3).

Accordingly, construing the evidence in the light most favorable to sustaining the verdict, we conclude that the jury reasonably could have concluded that the cumulative force of the evidence established that an unlawful entry had occurred at night.

B

The defendant also argues that the evidence presented to the jury was insufficient to prove beyond a reasonable doubt that he had entered the subject dwell-

ing with an intent to commit the crime of threatening against Willie Blake. We disagree.

"Intent is a mental process, and absent an outright declaration of intent, must be proved through inferences drawn from the actions of an individual, i.e., by circumstantial evidence. . . . Furthermore, any inference drawn must be rationale and founded upon the evidence." (Citation omitted; internal quotation marks omitted.) *State* v. *Iovieno*, 14 Conn. App. 710, 715, 543 A.2d 766, cert. denied, 209 Conn. 805, 548 A.2d 440 (1988).

The fact that the threatening charge[9] itself was not proven does not necessarily vitiate the guilty verdict on the burglary charge. See id., 717. The crime proscribed by § 53a-102 is complete once there has been an unlawful entering or remaining in a dwelling, at night, with the intent to commit a crime in that dwelling. See id. "This is so because the crime proscribed by [§ 53a-102] is complete once there has been an unlawful entering or remaining in a [dwelling] with the intent to commit a crime in that [dwelling]. Where, for example, the claim is that the crime intended to be committed by the burglar was larceny, the fact that there is no actual larceny does not bar a conviction for burglary." *State* v. *Little*, 194 Conn. 665, 675–76, 485 A.2d 913 (1984).

The jury reasonably could have inferred from the evidence that the defendant had intended to commit the crime of threatening against Willie Blake inside the subject dwelling. Willie Blake testified that at 9:30 p.m.,

---

[9] The December, 2001 substitute information, in addition to charging the defendant with burglary in the second degree, further accused him of having committed the crime of threatening. Specifically, it states "that at the City of Bridgeport, Fairfield County, on or about the 30th day of June, 2000 at or about 11:33 p.m., at 103 Catherine Street, Bridgeport, the said Robert Ward by physical threat, intentionally placed or attempted to place one Willie Blake in fear of imminent serious physical injury, in violation of Section 53a-62 (a) (1) of the Connecticut General Statutes."

the defendant forced his way into the dwelling with a two-by-four while acting in an aggressive manner and using profane language. The defendant's behavior frightened the children. The defendant was in the house for approximately thirty minutes. On his way out, the defendant told Willie Blake that he should have hit Willie Blake with the wooden stick. The defendant then added that if Willie Blake called the police that he "would come back and shoot up the house." Subsequently, at 11:30 p.m., Willie Blake informed Paz and Gilleran that the defendant had threatened to hit him with a stick. Again, at 2 a.m., on July 1, Willie Blake informed Gilleran that the defendant, who had just been arrested outside the subject dwelling, "had threatened him with a stick."

Additionally, Rosalee Blake testified that at 12:45 a.m., the defendant returned to the subject dwelling with a stick. Willie Blake was home at that time. The defendant again forced his way into the dwelling. Rosalee Blake and Willie Blake had to force the defendant out of the dwelling because the defendant would not leave on his own. On the basis of the defendant's threats during the first visit, the jury reasonably could have inferred that the defendant had returned at 12:45 a.m. to act on those threats made against Willie Blake.

Moreover, in burglary cases, our Supreme Court has stated that evidence of a forcible entry into a dwelling and flight from apprehension is sufficient evidence for the jury to infer an intent to commit a crime inside the dwelling. See *State* v. *Sinclair*, 197 Conn. 574, 577–78, 500 A.2d 539 (1985). Testimony indicated that after the police were called at 11:30 p.m., the defendant left the vicinity of the dwelling in a car driven by Mohammed.[10]

---

[10] In *Sinclair*, the defendant was convicted of burglary in the second degree. The defendant appealed, arguing that there was insufficient evidence for the jury to find that he had intended to commit a crime inside the building. *State* v. *Sinclair*, supra, 197 Conn. 576–77. The Supreme Court held that because the defendant had fled the scene *after* a security guard

The jury reasonably could have concluded that the defendant had fled the scene to avoid apprehension while being aware that a member of the Blake family had called the police. Testimony by Willie Blake and Rosalee Blake also indicate that on two occasions, the defendant had forced his way into the apartment.

Construing the evidence in the light most favorable to sustaining the verdict, we conclude that the jury reasonably could have concluded that the cumulative force of the evidence established that at the time of entering the dwelling, the defendant intended to commit the crime of threatening against Willie Blake.

The judgment is affirmed.

In this opinion the other judges concurred.

discovered him in the building, the jury reasonably could have concluded that such action was indicative of criminal purpose. Id., 578.

Here, the defendant fled the scene *prior* to the unlawful entry at 12:45 a.m. We have repeatedly stated that intent can be inferred from the defendant's conduct. See State v. Anderson, 74 Conn. App. 633, 638, 813 A.2d 1039, cert. denied, 263 Conn. 901, 819 A.2d 837 (2003). Accordingly, for purposes of intent, we see no meaningful distinction concerning the fact that the defendant fled prior to the unlawful entry as opposed to after the unlawful entry.