******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

STATE OF CONNECTICUT *v.* KMEL KELLY DAVIS
(AC 35751)

Alvord, Sheldon and Norcott, Js.

*Argued April 20—officially released September 8, 2015*

(Appeal from Superior Court, judicial district of New
Haven, B. Fischer, J.)

*Deren Manasevit*, assigned counsel, for the appel-
lant (defendant).

*Lisa A. Riggione*, senior assistant state's attorney,

with whom, on the brief, were *Michael Dearington*, state's attorney, and *Eugene R. Calistro*, *Jr.*, senior assistant state's attorney, for the appellee (state).

*Opinion*

NORCOTT, J. The defendant, Kmel Kelly Davis, appeals from the judgment of conviction, rendered after a jury trial, of one count of manslaughter in the first degree in violation of General Statutes § 53a-55, and one count of carrying a pistol or revolver without a permit in violation of General Statutes § 29-35 (a). The defendant claims on appeal that (1) the evidence was insufficient to support his conviction of first degree manslaughter because the state failed to disprove his claim of self-defense beyond a reasonable doubt; and (2) the trial court improperly rejected his proposed jury instructions on the presumption of innocence and the burden of proof that replaced the word "innocent" with the words "not guilty" in each. We reject both of these claims and, therefore, affirm the judgment of the trial court.

The jury could reasonably have found the following facts. On or about September 30, 2011, in the vicinity of 161 Clay Street, New Haven, Melvin Galloway was shot and killed, and Demetrius Wilkes was also shot, although he survived. That afternoon, before venturing into the neighborhood where the shooting took place, the defendant went to Norton Street and Whalley Avenue in New Haven to retrieve a .22 caliber revolver from his friend. The defendant, who had been selling drugs to supplement his income, had bought some crack cocaine from the same friend about two weeks beforehand.

The defendant then got a ride with another individual in a gold colored Toyota truck to the Clay Street neighborhood, purportedly to visit a friend. On arriving at 161 Clay Street, the defendant got out of the passenger side of the truck near a tree in front of the three family house at that address. Around that time, a crack cocaine addict approached the defendant and requested drugs. The defendant sold him two bags of crack cocaine. The addict then left the area.

After this transaction, the defendant walked up onto the front porch of 161 Clay Street, where Aaliyah Jones and Laquanna McNatt were sitting. McNatt was dating Galloway and resided, at the time, with her children on the second floor of the house at 161 Clay Street. Jones was Galloway's cousin and, at the time, resided nearby at 165 Clay Street. Jones had gone to McNatt's house to babysit one of McNatt's children, as McNatt had made plans to go out that evening with Jones's mother.

Almost immediately after the defendant joined McNatt and Jones on the porch, Galloway came onto the porch and asked the defendant "did he make a sale over there . . . ." The defendant answered that he had. Galloway then punched the defendant in the face, and the two began to fight. McNatt briefly tried to stop the combatants by getting in between them, but her efforts

were to no avail. At this point, both men were still standing as they fought.

About forty seconds into the fight, Galloway called out to his cousin, Wilkes, who was across the street. Wilkes ran to the porch and began to punch the defendant. Wilkes also pulled the hood of the defendant's sweatshirt over his face. Jones testified that "both [Galloway and Wilkes were] on the defendant, just had him by his head, they all was running around punching each other."

Galloway and Wilkes then wrestled the defendant to the ground. Wilkes punched the defendant a couple of times, and the defendant struck back. McNatt then broke up the fight, and the defendant pulled out a gun and started shooting. He fired two or three shots, then paused, then fired three more shots. Wilkes was shot first as he was leaving the porch; he sustained two nonfatal bullet wounds. Galloway, who was shot second, also attempted to run away and sustained multiple gunshot wounds as he fled. At least one of these wounds caused his death. The defendant then fled the scene.

The defendant was arrested ten days later, on October 10, 2011, after learning that the police were looking for him and going to the police station with his attorney to turn himself in. The state charged the defendant with one count of murder in violation of General Statutes § 53a-54a (a), one count of assault in the first degree by means of the discharge of a firearm in violation of General Statutes § 53a-59 (a) (5), and one count of carrying a pistol or revolver without a permit in violation of § 29-35 (a). After a trial, the jury found the defendant not guilty of the charge of murder and instead convicted him of the lesser included offense of manslaughter in the first degree in violation of § 53a-55, and of carrying a pistol or revolver without a permit in violation of § 29-35. The jury acquitted him on the count of assault in the first degree. This appeal followed. Additional facts and procedural history will be set forth as necessary.

I

The defendant first claims that the evidence was insufficient to support his conviction because the state failed to disprove his claim of self-defense beyond a reasonable doubt. Specifically, the defendant argues that the circumstances of the altercation between him and the victims justified the defendant's belief that he was about to suffer serious bodily harm and that his use of deadly force was, therefore, objectively reasonable under the circumstances. The defendant's arguments rest, however, upon a competing interpretation of the evidence that the jury rejected. Because the jury's rejection of the defendant's interpretation was reasonable, the defendant's claim fails.

"Whether the defense of the justified use of force,

properly raised at trial, has been disproved by the state is a question of fact for the jury, to be determined from all the evidence in the case and the reasonable inferences drawn from that evidence." (Emphasis omitted; internal quotation marks omitted.) *State* v. *Pauling*, 102 Conn. App. 556, 571–72, 925 A.2d 1200, cert. denied, 284 Conn. 924, 933 A.2d 727 (2007). "[I]n viewing evidence which could yield contrary inferences, the jury is not barred from drawing those inferences consistent with guilt and is not required to draw only those inferences consistent with innocence." (Internal quotation marks omitted.) *State* v. *Johnson*, 71 Conn. App. 272, 281, 801 A.2d 890, cert. denied, 261 Conn. 939, 808 A.2d 1133 (2002), cert. denied, 537 U.S. 1207, 123 S. Ct. 1286, 154 L. Ed. 2d 1052 (2003). Accordingly, the "standard for reviewing sufficiency claims in conjunction with a justification offered by the defense is the same standard used when examining claims of insufficiency of the evidence. . . . In reviewing [a] sufficiency [of evidence] claim, we apply a two-part test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the jury reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt. . . .

"On appeal, we do not ask whether there is a reasonable view of the evidence that would support a reasonable hypothesis of innocence. We ask, instead, whether there is a reasonable view of the evidence that supports the [trier of fact's] verdict of guilty. . . . We are mindful as well that [t]he state has the burden of disproving the defense of justified use of force . . . beyond a reasonable doubt. . . . Whether the defense of the justified use of force, properly raised at trial, has been disproved by the state is a question of fact for the jury, to be determined from all the evidence in the case and the reasonable inferences drawn from that evidence. . . . As long as the evidence presented at trial was sufficient to allow the jury reasonably to conclude that the state had met its burden of persuasion, the verdict will be sustained." (Citation omitted; internal quotation marks omitted.) *State* v. *Wortham*, 80 Conn. App. 635, 640–41, 836 A.2d 1231 (2003), cert. denied, 268 Conn. 901, 845 A.2d 406 (2004).

General Statutes § 53a-19 governs the use of physical force in defense of person, or self-defense.[1] "Our Supreme Court has interpreted § 53a-19 (a) to require that a person may justifiably use deadly physical force in self-defense only if he reasonably believes both that (1) his attacker is using or about to use deadly physical force against him, or is inflicting or about to inflict great bodily harm, and (2) that deadly physical force is necessary to repel such an attack." (Emphasis omitted; internal quotation marks omitted.) *State* v. *Pranckus*, 75 Conn. App. 80, 88, 815 A.2d 678, cert. denied, 263

Conn. 905, 819 A.2d 840 (2003).

"First, we construe the evidence in the light most favorable to sustaining the verdict." (Internal quotation marks omitted.) *State* v. *Wortham*, supra, 80 Conn. App. 640. Among other evidence, the jury had before it the testimony of several eyewitnesses. These witnesses uniformly testified to a version of events that was at odds with the defendant's and that, if the witness' version was believed, would have disproved the defendant's claim of self-defense. Jones, McNatt, and Wilkes, who was the assault victim, all testified that Wilkes was not armed with a gun. This testimony conflicted with the account of the defendant, who claimed to have seen Wilkes try, but fail, to pull out a black pistol lodged between his belt and waistband. Furthermore, all of the eyewitnesses testified that the defendant shot the victims as they were running away from the porch. This testimony, too, conflicted with that of the defendant, who claimed that he shot the victims while they were both still on the porch. The physical evidence also corroborated the eyewitnesses' account: there was no blood found on the porch; blood was found only at the bottom of the porch steps and leading away from them. Furthermore, although Galloway's deepest bullet wound was to his chest, expert testimony established that there was no stippling around the wound, which, if present, would have suggested a close proximity between him and the defendant, as the defendant had testified. The witnesses all also testified that the defendant paused in between shooting Wilkes and Galloway. Furthermore, Detective Nicole Natale of the New Haven Police Department testified that, when the defendant turned himself in to the police, he had no apparent wounds of any kind.

The next step of our analysis is to "determine whether upon the facts so construed and the inferences reasonably drawn therefrom the jury reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt." (Internal quotation marks omitted.) Id. The jury was free to believe the testimony of the state's witnesses and to disbelieve the defendant's. If the jury credited the testimony of the state's witnesses, it could have inferred that, because Wilkes was unarmed, the defendant's alleged belief that deadly force was about to be used against him was not reasonable. See General Statutes § 53a-19 (a); *State* v. *Pranckus*, supra, 75 Conn. App. 88–89. The jury could have drawn the same inference if it believed the testimony of the state's witnesses that the victims were, in fact, running away when the defendant shot them, in conjunction with the physical evidence, specifically, the blood trail that only began off the porch. Furthermore, if the jury credited Natale's testimony, it could have inferred that, because the defendant bore no obvious physical signs of having been wounded when he turned himself in to the police,

he had not suffered any during the altercation and could not reasonably have believed that he was about to suffer "great bodily harm" at the hands of the victims when he shot them. General Statutes § 53a-19 (a). Even individually, such inferences would defeat the defendant's self-defense claim.

Although the defendant points to many pieces of evidence in the record that he construes in support of his self-defense theory, the jury was free to disbelieve that evidence or to draw different inferences from it than the defendant draws. See *State* v. *Pranckus*, supra, 75 Conn. App. 88. By contrast, there was ample evidence before the jury that contradicted, or could have been construed to contradict, the defendant's theory. Because there is therefore a "reasonable view of the evidence that supports the [jury's] verdict of guilty"; *State* v. *Wortham*, supra, 80 Conn. App. 640–41; we conclude that there was sufficient evidence to sustain the defendant's conviction of manslaughter in the first degree.

## II

The defendant next claims that the trial court erroneously rejected his proposed jury instructions on the presumption of innocence and the burden of proof, which requested that the jury be instructed, respectively, that the defendant is "presumed to be not guilty" and that "the defendant does not have to prove that he is not guilty." Specifically, the defendant contends that because "not guilty" and "innocent" are legally distinct concepts, the trial court's failure to substitute the words "not guilty" for the word "innocent" in the instructions likely misled the jury into believing that it would have to find that the defendant was innocent in order to render a verdict of not guilty. Accordingly, he claims, he was denied a fair trial. We disagree.

The facts relevant to this claim are as follows. At trial, the defendant submitted a set of written requests to charge dated January 4, 2013. Among those requests was a proposed instruction on the burden of proof and a proposed instruction on the presumption of innocence. The defendant's proposed instruction on the burden of proof read in relevant part: "The defendant does not have to prove that he is not guilty." The defendant's proposed instruction on the presumption of innocence read in relevant part: "[T]he accused is presumed to be *not guilty until, and only if,* he is proved guilty." (Emphasis in original.) The trial court declined each of these requests. The trial court gave the traditional instructions in these areas of the law, which use the word "innocent" instead of the words "not guilty."[2]

Before delving into the merits of the defendant's claim, we set forth the standard of review for instructional impropriety. In gauging the propriety of jury instructions, "[t]he pertinent test is whether the charge,

read in its entirety, fairly presents the case to the jury in such a way that injustice is not done to either party under the established rules of law. . . . Thus, [t]he whole charge must be considered from the standpoint of its effect on the [jurors] in guiding them to the proper verdict . . . and not critically dissected in a microscopic search for possible error. . . . Accordingly, [i]n reviewing a constitutional challenge to the trial court's instruction, we must consider the jury charge as a whole to determine whether it is reasonably possible that the instruction misled the jury. . . . In other words, we must consider whether the instructions [in totality] are sufficiently correct in law, adapted to the issues and ample for the guidance of the jury." (Internal quotation marks omitted.) *State* v. *Lavigne*, 307 Conn. 592, 599–600, 57 A.3d 332 (2012).

The law of jury instruction on the presumption of innocence remains as it was in *State* v. *Dickson*, 150 Conn. App. 637, 91 A.3d 958, cert. granted on other grounds, 314 Conn. 913, 100 A.3d 404 (2014), which the defendant in his reply brief conceded controls this case, but at oral argument claimed was distinguishable.[3] "[A] claim of instructional impropriety regarding the presumption of innocence . . . is of constitutional magnitude. . . . The principle that there is a presumption of innocence in favor of the accused is the undoubted law, axiomatic and elementary, and its enforcement lies at the foundation of the administration of our criminal law." (Citation omitted; internal quotation marks omitted.) Id., 653.

"[I]n a criminal case the term [presumption of innocence] does convey a special and perhaps useful hint over and above the other form of the rule about the burden of proof, in that it cautions the jury to put away from their minds all the suspicion that arises from the arrest, the indictment, and the arraignment, and to reach their conclusion solely from the legal evidence adduced. In other words, the rule about burden of proof requires the prosecution by evidence to convince the jury of the accused's guilt; while the presumption of innocence, too, requires this, but conveys for the jury a special and additional caution (which is perhaps only an implied corollary to the other) to consider, in the material for their belief, nothing but the evidence, i.e., no surmises based on the present situation of the accused." (Emphasis omitted; internal quotation marks omitted.) Id., 654, quoting *Taylor* v. *Kentucky*, 436 U.S. 478, 484–85, 98 S. Ct. 1930, 56 L. Ed. 2d 468 (1978).

The court in *Dickson* deemed an instruction on the presumption of innocence that used the word "innocent" instead of the phrase "not guilty" to be "correct in law [and] adapted to the issues," and, accordingly, the instruction "provided ample guidance to the jury." (Internal quotation marks omitted.) *State* v. *Dickson*, supra, 150 Conn. App. 652, 654. The trial court here

gave an instruction identical in this respect, and therefore, like the trial court in *Dickson*, "did not abuse its discretion by charging the jury with the words the defendant is presumed to be innocent." (Internal quotation marks omitted.) Id., 654. Accordingly, we also conclude that the court did not abuse its discretion by charging the jury with the words "[t]he defendant does not have to prove his innocence." See id.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] General Statutes § 53a-19 provides in relevant part: "(a) Except as provided in subsections (b) and (c) of this section, a person is justified in using reasonable physical force upon another person to defend himself or a third person from what he reasonably believes to be the use or imminent use of physical force, and he may use such degree of force which he reasonably believes to be necessary for such purpose; except that deadly physical force may not be used unless the actor reasonably believes that such other person is (1) using or about to use deadly physical force, or (2) inflicting or about to inflict great bodily harm.

"(b) Notwithstanding the provisions of subsection (a) of this section, a person is not justified in using deadly physical force upon another person if he or she knows that he or she can avoid the necessity of using such force with complete safety (1) by retreating, except that the actor shall not be required to retreat if he or she is in his or her dwelling, as defined in section 53a-100, or place of work and was not the initial aggressor . . . or (2) by surrendering possession of property to a person asserting a claim of right thereto, or (3) by complying with a demand that he or she abstain from performing an act which he or she is not obliged to perform.

"(c) Notwithstanding the provisions of subsection (a) of this section, a person is not justified in using physical force when (1) with intent to cause physical injury or death to another person, he provokes the use of physical force by such other person, or (2) he is the initial aggressor, except that his use of physical force upon another person under such circumstances is justifiable if he withdraws from the encounter and effectively communicates to such other person his intent to do so, but such other person notwithstanding continues or threatens the use of physical force, or (3) the physical force involved was the product of a combat by agreement not specifically authorized by law."

[2] The trial court's instructions read in relevant part: "Now, there are certain general principles which govern the ordinary procedure of a trial of a person charged with a violation of our law and I'll now instruct you on these principles, and the first is the presumption of innocence. In this case as in all criminal prosecutions *the defendant is presumed to be innocent until proven guilty* beyond a reasonable doubt. It is a fundamental principle of our system. The presumption of innocence was with this defendant when he was first presented for trial in this case. He must be considered free of any bias or prejudice or burden arising out of the fact that he's been arrested. This continues with him throughout this trial. Unless and until such time as all the evidence, produced here in the orderly conduct of the case, considered in the light of these instructions of law, and deliberated upon you in the jury room, satisfies you beyond a reasonable doubt that he is guilty. Thus, the presumption of innocence alone is sufficient to acquit the defendant . . . unless the jurors are satisfied beyond a reasonable doubt of the defendant's guilt after a careful and impartial consideration of all the evidence and facts in this case. The presumption of innocence applies individually to each crime charged and it may be overcome as to each specific crime only if the state introduces evidence that establishes the defendant's guilt as to each crime charged beyond a reasonable doubt. If and when the presumption of innocence has been overcome by evidence proven beyond a reasonable doubt that the accused is guilty of the crime charged, then it is the sworn duty of the jury to enforce the law and render such a verdict. The next subject I want to talk to you about is the burden of proof.

"The burden to prove the defendant guilty of the crime or crimes charged is upon the state of Connecticut. *The defendant does not have to prove his innocence.* This means that the state must prove beyond a reasonable doubt each and every element necessary to constitute the crime charged. Whether

the burden of proof resting upon the state is sustained depends not upon the number of witnesses nor on the quantity of the testimony but on the nature and quality of the testimony. Please bear in mind that one witness' testimony is sufficient to convict if it establishes all the elements of the crime beyond a reasonable doubt. The state must prove every element necessary to constitute the crime charged. If one element of the crime charged is lacking you must find the defendant not guilty of that crime. The state is not required to prove every fact concerning the crime charged beyond a reasonable doubt. The state's obligation is to prove each and every element of the crime charged beyond a reasonable doubt." (Emphasis added.)

[3] The defendant filed his principal appellate brief on April 14, 2014. This court decided *Dickson* on June 3, 2014. Although the defendant filed his reply brief on December 19, 2014, after *Dickson* was decided, he did not in that brief argue that *Dickson* was distinguishable. At oral argument before this court, however, the defendant pointed out that in *Dickson* the facts involved premeditated robbery; see *State* v. *Dickson*, supra, 150 Conn. App. 639–41; whereas in this case, there was a self-defense claim, with the purported result that the jury was more likely to be confused by the traditional instruction in this case than in *Dickson*. Because the defendant has not briefed this argument, we will not pass upon it. See, e.g., *Nowacki* v. *Nowacki*, 129 Conn. App. 157, 165, 20 A.3d 702 (2011) (declining to review issue because inadequately briefed).